BRANDON DOUGLAS ALLAN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 36410

January 22, 2002      38 P.3d 175

[Rehearing denied April 3, 2002]

MAUPIN, C. J., with whom AGOSTI and LEAVITT, JJ., agreed, dissented.

*Richard F. Cornell,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, ROSE, J.:

On October 22, 1999, appellant Brandon Douglas Allan fired one shot from his high-caliber handgun, killing his girlfriend Kellie Von Urquidy Parry. A jury convicted Allan of first-degree murder and sentenced him to two consecutive terms of life imprisonment, with the possibility of parole in forty years. We must determine whether the district court erred in concluding that Allan's post-arrest statements were voluntary, and thus, admissible for impeachment purposes—a ruling that caused Allan to forego his constitutional right to testify. After a thorough review of the record, we conclude that Allan's conviction must be reversed and remanded for a new trial because the district court erred in concluding that his post-arrest statements were voluntary.

## *FACTS*

On October 22, 1999, Maureen Allan-Fry, Allan's mother, found Parry shot and dead on the floor in the master bedroom of Allan's trailer located in Sun Valley, Nevada. Leaving Allan at home, Maureen drove to a nearby fire station where she reported the shooting.

Numerous officers arrived at Allan's home in response to the report. Because Allan refused to exit the trailer, Sergeant Donald Depoali called and spoke with Allan on the telephone. Sergeant Depoali testified that in speaking with Allan he drew the conclusion that Allan was either under the influence of narcotics or was intoxicated because Allan was at times incoherent and was not giving him clear answers. Meanwhile, Sergeant Depoali was able to convince Allan to come out of the trailer. However, when Allan did appear, he had a .50 caliber Desert Eagle, the high-caliber handgun he used to kill Parry, in his waistband and stated to the officers, "I don't go anywhere without it." Sergeant Depoali implored Allan to put his weapon down and informed Allan that the gun "ain't going to solve nothing for nobody," to which Allan responded, "it will for me." Sergeant Depoali understood this to mean that Allan wanted the officers to shoot him. Allan eventually complied with Sergeant Depoali's request and put the gun down, which was found cocked and ready to fire with a full magazine. Allan was arrested and transported to the police station, where the police questioned him during a five-and-a-half-hour interview.

Before trial, the district court conducted a hearing to determine the voluntariness of statements Allan made to the police after being arrested. Detective Larry Canfield, the officer who inter-

viewed Allan after his arrest, testified that Allan was sometimes incoherent during the interview because he mumbled and garbled his words. While Detective Canfield began reading Allan's *Miranda* rights, Allan made a statement, but Detective Canfield testified that he did not understand what Allan was saying, and so he proceeded to read Allan his rights and continue with the interview. Allan's counsel, however, insisted that Allan stated, "I don't want to say a word anyway, I want to see my lawyer," which Allan's counsel argued was an anticipatory invocation of his *Miranda* right to counsel. Upon replay of the videotapes that recorded the interview, Detective Canfield admitted that he heard something about "not saying a word" and the word "lawyer," but that he could not make out the context of the statement. Notably though, Allan did not affirmatively waive his *Miranda* rights, but instead simply responded to Detective Canfield's questions asking him what happened.

Allan's counsel used the tapes to show many instances where Allan stated, "I don't want to talk about it," "I don't want to talk about what happened," and "I don't have anything to say." Despite these statements, Detective Canfield continued his interview, urging Allan to talk because "it was better for him" and that it would make it easier for his mother, and instructing Allan not to "hold it in." During the interview, an attorney appeared at the detention center for purposes of representing Allan but was not allowed to see Allan. Allan was never informed about the presence of the attorney, but Detective Canfield re-Mirandized Allan on the advice of the district attorney who counseled the detective during the interview. The interview started at about 3:30 p.m. and lasted for five and a half hours. Notably, Allan informed Detective Canfield that he had not slept for three days because he was under the influence of methamphetamine. Ultimately, Detective Canfield obtained some details about the shooting from Allan.

At the pre-trial hearing, the district court found that Allan had made six invocations of his right to remain silent during the first half of the interview. Additionally, the district court found that Allan's initial statement, which Detective Canfield overlooked or simply did not hear, was indeed an "unequivocal" request for counsel. Accordingly, the district court concluded that further interrogation should have stopped until Allan's attorney was present. Nonetheless, the district court concluded that Allan's post-arrest statements could be used for impeachment purposes on cross-examination of Allan because the district court found that these statements were voluntary. The district court used the totality-of-circumstances test for voluntariness and found: (1) Allan had not been deprived of food or sleep; (2) there was no evidence to suggest that officers physically coerced Allan; (3) Allan was

twice informed of his constitutional rights; and (4) although Allan was under the influence of methamphetamine, he was clearly in possession of his faculties, as demonstrated by the fact that he remembered his social security number and discussed issues regarding foreclosure of his residence.

At trial the parties stipulated that blood tests were performed on Allan, which revealed he had methamphetamine and amphetamine in his system.

After the State's case-in-chief, the district court held a hearing to inform Allan of his right to testify. Allan's counsel informed the district court of the advice he gave Allan regarding whether to testify. Specifically, he stated that he advised Allan that according to the district court's voluntariness ruling, if Allan took the stand, the State could use his post-arrest statements to impeach him. Based on this, Allan elected not to testify.

Allan did not call any witnesses, but his counsel in closing argument asserted that Allan shot Parry accidentally. Nonetheless, the jury concluded that Allan had committed first-degree murder with use of a deadly weapon, and after a daylong penalty hearing the jury imposed consecutive life terms, with the possibility of parole in forty years.

## DISCUSSION

It is uncontested that Detective Canfield violated Allan's *Miranda* rights by continuing with his interrogation after Allan unequivocally requested an attorney and made six invocations of his right to remain silent.[1] Despite this, the district court found, and the State continues to argue, that Allan's statements were voluntary, and therefore, admissible for impeachment purposes. Allan argues, however, that in considering the totality of the circumstances to determine voluntariness, the district court failed to give proper weight to the effect of Detective Canfield's violation of *Miranda* on Allan's weakened mental condition. As a result of the district court's ruling, Allan contends that he was deprived of his constitutional right to testify because the State indicated that it would use his statements to impeach him if he testified.

"A confession is admissible only if it is freely and voluntarily made."[2] A district court's determination that a confession is voluntary will not be disturbed on appeal if it is supported by

---

[1] *See, e.g.,* "I don't want to say a word anyway, I want to see my lawyer," "I don't want to talk about it," "I don't have anything to say," and "I don't want to talk about what happened."

[2] *Steese v. State,* 114 Nev. 479, 488, 960 P.2d 321, 327 (1998) (citing *Passama v. State,* 103 Nev. 212, 213, 735 P.2d 321, 322 (1987)).

substantial evidence.[3] "Substantial evidence is that which a reasonable mind might consider adequate to support a conclusion."[4]

Under the Due Process Clause of the Fourteenth Amendment, a confession is involuntary only if the suspect's ability to exercise his free will was overborne by police coercion.[5] The court must analyze the voluntariness of a defendant's confession under the totality-of-the-circumstances analysis. Among others, we consider the following factors:

> "[T]he youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep."[6]

After reviewing the totality of the circumstances, we conclude the district court's determination that Allan's confession was voluntary was not supported by substantial evidence. We first acknowledge, however, that the district court correctly found that during the interview Allan had not been deprived of food or sleep, the police officers did not physically coerce Allan, and Allan was twice informed of his constitutional rights. On balance, these factors tend to favor the State's position that Allan's statements were voluntary.

On the other hand, several factors support our conclusion that Allan's confession was involuntary because Detective Canfield had succeeded in overbearing Allan's ability to exercise his free will. When Detective Canfield began advising Allan of his constitutional rights at the start of the interrogation, Allan made an unequivocal request for counsel when he stated, "I don't want to say a word anyway, I want to see my lawyer." Despite Allan's unequivocal request, Detective Canfield continued the interrogation. In addition, Allan made six invocations of his right to remain silent during the first hour of the interrogation, but Detective Canfield refused to honor Allan's right to cease questioning.[7]

---

[3]*Id.*

[4]*Id.*

[5]*See Colorado v. Connelly,* 479 U.S. 157, 167 (1986); *see also Passama v. State,* 103 Nev. at 214, 735 P.2d at 323.

[6]*Steese,* 114 Nev. at 488, 960 P.2d at 327 (quoting *Passama,* 103 Nev. at 214, 735 P.2d at 323).

[7]*See Henry v. Kernan,* 197 F.3d 1021, 1028 (9th Cir. 1999) ("Any minimally trained police officer should have known such pressure [in ignoring the suspect's request to cease questioning] was improper and likely to produce involuntary statements.").

Instead, Detective Canfield engaged in psychological pressure as he insisted that Allan talk about what had happened. By not honoring Allan's requests, Detective Canfield repeatedly violated Allan's constitutional rights. Although Detective Canfield again advised Allan of his constitutional rights, this did not occur until four hours into the interrogation, after Allan had already made several incriminating statements.

Another important factor in this analysis is that Allan was under the influence of methamphetamine during the interview. We note that Allan's mental condition by itself does not dispose of the inquiry into constitutional voluntariness; but when police officers turn to more subtle forms of psychological pressure, the defendant's mental condition becomes a more significant factor in the voluntariness calculus.[8] The district court found that Allan appeared to be in control of his faculties as Allan clearly stated his social security number without assistance, he corrected Detective Canfield's reference to the address where the incident occurred, and he understood some issues regarding the foreclosure of his residence. However, he could not state the details of the foreclosure proceeding. Detective Canfield testified, however, that he knew Allan was under the influence of methamphetamine, causing him to garble his words and to come "in and out" of the conversation. In addition, Allan informed Detective Canfield he had used methamphetamine that morning and also that he had not slept for three days. Though Allan made several invocations of the right to remain silent, Detective Canfield used subtle forms of psychological persuasion, despite Allan's mental condition, as he urged Allan to talk about what happened. Further, we note that Allan displayed unusual emotional outbursts during the interrogation as he was crying and made several comments that he should suffer and that killing himself was too easy.

Considering the totality of the circumstances, we conclude that Allan's confession was not freely and voluntarily given. Accordingly, we hold that the district court's determination that Allan's confession was voluntary and admissible for impeachment purposes[9] is not supported by substantial evidence. We further conclude that the district court's error was not harmless because Allan chose not to testify based on the district court's erroneous voluntariness determination.[10] Had Allan testified, the outcome of

---

[8]*See Connelly,* 479 U.S. at 163. *See also Chambers v. State,* 113 Nev. 974, 981-82, 944 P.2d 805, 809-10 (1997).

[9]*See Henry,* 197 F.3d at 1026 ("Post-*Miranda* confessions which are found to be involuntary may not be admitted for any purposes, including impeachment.").

[10]*See Rock v. Arkansas,* 483 U.S. 44, 49-53 (1987) (noting that a criminal defendant has the constitutional right to testify on his or her own behalf).

the trial might have been different.[11] In light of this conclusion, we need not reach Allan's other contentions.[12]

## CONCLUSION

Accordingly, we reverse Allan's judgment of conviction and remand the case for a new trial.

YOUNG, SHEARING and BECKER, JJ., concur.

MAUPIN, C. J., with whom AGOSTI and LEAVITT, JJ., agree, dissenting:

In my view, the district court's determination that Allan's post-arrest statements to police were voluntary was supported by substantial evidence.

As noted by the majority, a confession is involuntary under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution only if the suspect's ability to exercise his free will was overborne by police coercion.[1] Under our decision in *Steese v. State,*[2] we must analyze the voluntariness of a confession in terms of the "totality of circumstances" surrounding the interrogation. In this, we consider such factors including the youth, education and intelligence of the accused, the length of detention and the duration of questioning, and the use of physical abuse such as the deprivation of food or sleep.[3] Here, there was no indication that Allan had been deprived of food or sleep during the interrogation process, and his statement does not demonstrate a marked lack of intellect or education. That he was aware of his right to counsel and gave his correct social security number also supports the district court's ruling insofar as it might relate to Allan's claim that his will was overborne secondary to intoxication or otherwise. Finally, the fact that Allan had gone without sleep for a considerable period of time due to his ingestion of methamphetamine is not of itself fatal to the district court's conclusion that the statements, although taken in violation of *Miranda,* were voluntary.

As I see it, the district court made its voluntariness determination based upon a legitimate interpretation of the videotape, which

[11]*See Henry,* 197 F.3d at 1029 (noting that after determining that the statements are involuntary, the court must consider whether the error of admitting the statements for impeachment purposes had a substantial and injurious effect on the verdict). *See also Schoels v. State,* 115 Nev. 33, 35, 975 P.2d 1275, 1276 (1999) (observing that an error is harmless if in absence of the error the outcome would have been the same).

[12]However, we reject Allan's contention that the State presented insufficient evidence to convict him of first-degree murder.

[1]*See Colorado v. Connelly,* 479 U.S. 157, 167 (1986); *see also Passama v. State,* 103 Nev. 212, 214, 735 P.2d 321, 323 (1987).

[2]114 Nev. 479, 960 P.2d 321 (1998).

[3]*Id.* at 488, 960 P.2d at 327.

depicts the interchange between Allan and Officer Canfield. I therefore conclude that the district court, in its ruling that Allan's statement was admissible for impeachment purposes, did not improperly affect his right to testify.

