JOHN ROSKY, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 41566

May 26, 2005                                          111 P.3d 690

---

*Kay Ellen Armstrong,* Carson City, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Joseph R. Plater III,* Deputy District Attorney, Washoe County, for Respondent.

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

# OPINION

By the Court, MAUPIN, J.:

Appellant John Rosky was convicted in district court of sexual assault and indecent exposure.[1] On appeal, Rosky asserts that the district court committed reversible error by denying his motion to suppress a pre-arrest videotaped statement he made to investigators, by admitting prior bad act testimony, and by instructing the jury on flight. We conclude that the district court committed no error in the admission of Rosky's videotaped statement to detectives and in the giving of its flight instruction. However, we conclude that the admission of prior bad act testimony as proof of a common plan or scheme or modus operandi under NRS 48.045(2), combined with improper limiting instructions and the State's improper remarks during its opening statement, compels reversal of Rosky's sexual assault conviction. These errors, however, are harmless with respect to the conviction for indecent exposure. We therefore affirm the judgment of conviction of indecent exposure, but we reverse the judgment of conviction of sexual assault and remand for a new trial on that charge.

## DISCUSSION

### Admission of videotaped statement

In January 2000, as part of a sexual assault investigation concerning a 13-year-old female, CJW, five police officers executed a search warrant at Rosky's apartment. Two of the officers eventually drove Rosky to a police substation for questioning, but did not formally place him under arrest. Approximately 1½ hours into a videotaped interview, Rosky admitted to a brief consensual act of sexual intercourse with CJW. Rosky moved to suppress the interview because the officers failed to administer *Miranda*[2] warnings. The district court concluded that *Miranda* did not apply because the statements were elicited in a noncustodial setting. It further

---

[1]The district court sentenced Rosky to the Nevada State Prison for life with the possibility of parole after a minimum of 20 years on the sexual assault count and a concurrent term of 1 year in the Washoe County Jail on the indecent exposure count. Rosky received credit for 53 days of time served, and the district court ordered Rosky to pay a $25 administrative assessment, a $150 DNA testing fee and reimbursement to the Washoe County Public Defender's Office in the amount of $500 for legal fees. The court also imposed a special condition of lifetime supervision in the event of parole.

[2]*Miranda v. Arizona,* 384 U.S. 436 (1966).

concluded that the statements were voluntary. Rosky argues on appeal that these determinations are erroneous and require reversal.

### Standards of review

Our prior cases have not consistently stated this court's standard of review of a district court's "in custody" determination for purposes of *Miranda*.[3] Further, we have previously applied a highly deferential "substantial evidence" standard in reviewing the ultimate question of the voluntariness of a defendant's confession.[4] Following the United States Supreme Court's pronouncements in *Thompson v. Keohane*[5] and *Miller v. Fenton*[6] on these issues, we clarify that a trial court's custody and voluntariness determinations present mixed questions of law and fact subject to this court's de novo review.[7]

The proper inquiry requires a two-step analysis. The district court's purely historical factual findings pertaining to the "scene-and action-setting" circumstances surrounding an interrogation is entitled to deference and will be reviewed for clear error. However, the district court's ultimate determination of whether a person was in custody and whether a statement was voluntary will be reviewed de novo. Under *Thompson* and *Miller*, these decisions retain a " 'uniquely legal dimension,' "[8] requiring the "application of the controlling legal standard to the historical facts."[9] We therefore

---

[3]*Compare Proferes v. State*, 116 Nev. 1136, 1138, 13 P.3d 955, 956 (2000) (the district court's findings in a suppression hearing will be upheld unless this court is definitely and firmly convinced that the district court erred), *with Mitchell v. State*, 114 Nev. 1417, 1423, 971 P.2d 813, 817 (1998) (a defendant's constitutional entitlement to *Miranda* warnings is a question of law reviewed de novo; however, a district court's determination of whether a defendant is in custody will not be disturbed where substantial evidence supports the determination). *See also Alward v. State*, 112 Nev. 141, 154, 912 P.2d 243, 252 (1996).

[4]*See, e.g., Allan v. State*, 118 Nev. 19, 23-24, 38 P.3d 175, 178 (2002) ("A district court's determination that a confession is voluntary will not be disturbed on appeal if it is supported by substantial evidence.").

[5]516 U.S. 99 (1995).

[6]474 U.S. 104 (1985).

[7]*Thompson*, 516 U.S. at 112-13; *Miller*, 474 U.S. at 112-18; *see also U.S. v. Axsom*, 289 F.3d 496, 499-500 (8th Cir. 2002); *U.S. v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002); *U.S. v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001); *McMorran v. State*, 118 Nev. 379, 383, 46 P.3d 81, 84 (2002) (stating this court "reviews the lawfulness of a search de novo because such a review requires consideration of both factual circumstances and legal issues").

[8]*Thompson*, 516 U.S. at 112 (quoting *Miller*, 474 U.S. at 116).

[9]*Id.*

overrule our prior case law to the extent that it has applied more deferential standards of direct appellate review than the Supreme Court's pronouncements in these contexts.[10]

For this standard of review to function properly, "trial courts must exercise their responsibility to make factual findings when ruling on motions to suppress."[11] As one state court has explained:

> Reviewing courts should not be required to surmise what factual findings that the trial court made. Instead, the trial court should make clear any factual findings upon which it is relying. It is only through this synergy between the trial and reviewing courts that appellate courts can develop a uniform body of precedent to guide law enforcement officers in their determination of whether their actions may violate the constitution.[12]

To facilitate proper appellate review, we advise district courts to clearly set forth the factual findings relied upon in resolving suppression motions.

### Custody under Miranda

"The Fifth Amendment privilege against self-incrimination provides that a suspect's statements made during custodial interrogation are inadmissible at trial unless the police first provide a *Miranda* warning."[13] "Custody" for *Miranda* purposes means a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.[14] If there is no formal arrest, the pertinent inquiry is whether a reasonable person in the suspect's position would feel "at liberty to terminate the interrogation and leave."[15] A court must answer this question by taking an objective look at "all of the circumstances surrounding the interrogation."[16] The United States Supreme Court has recently indicated that a suspect's prior history with law enforcement has no bearing on the ob-

---

[10]*See, e.g., Allan,* 118 Nev. at 23-24, 38 P.3d at 178; *Proferes,* 116 Nev. at 1138, 13 P.3d at 956; *Mitchell,* 114 Nev. at 1423, 971 P.2d at 817; *Alward,* 112 Nev. at 154, 912 P.2d at 252.

[11]*In re G.O.,* 727 N.E.2d 1003, 1010 (Ill. 2000).

[12]*Id.*

[13]*State v. Taylor,* 114 Nev. 1071, 1081, 968 P.2d 315, 323 (1998).

[14]*Alward,* 112 Nev. at 154, 912 P.2d at 252.

[15]*Thompson,* 516 U.S. at 112; *see also Alward,* 112 Nev. at 154, 912 P.2d at 252 (stating the pertinent inquiry focuses on " 'how a reasonable man in the suspect's position would have understood his situation' " (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442 (1984))).

[16]*Stansbury v. California,* 511 U.S. 318, 322 (1994).

jective determination of whether the suspect is in custody for *Miranda* purposes,[17] although this factor may be relevant in deciding whether a confession is voluntary.[18]

In *Alward v. State,* this court listed several factors pertinent to the objective custody determination: "(1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning."[19] Here, it is undisputed that the detectives interrogated Rosky in a police substation and that the investigation was focused solely upon him. However, as the State correctly notes, this court has previously found interrogations to be noncustodial when suspects voluntarily accompanied officers to the police station, understood that they were not under arrest and voluntarily responded to police questioning.[20] But, because no one factor is dispositive,[21] we turn to an independent analysis of *Alward*'s third and fourth factors, indicia of arrest and length and form of questioning.

In *State v. Taylor,* this court provided several objective indicia of arrest:

> (1) whether the suspect was told that the questioning was voluntary or that he was free to leave; (2) whether the suspect was not formally under arrest; (3) whether the suspect could move about freely during questioning; (4) whether the suspect voluntarily responded to questions; (5) whether the atmosphere of questioning was police-dominated; (6) whether the police used strong-arm tactics or deception during questioning; and (7) whether the police arrested the suspect at the termination of questioning.[22]

The district court determined that the objective indicia of arrest leaned toward noncustodial interrogation. We agree.

---

[17]*Yarborough v. Alvarado,* 541 U.S. 642, 666 (2004) (decided in the context of habeas corpus review).

[18]*See Lynumn v. Illinois,* 372 U.S. 528, 534 (1963).

[19]112 Nev. at 155, 912 P.2d at 252.

[20]*See Silva v. State,* 113 Nev. 1365, 1369-70, 951 P.2d 591, 594 (1997); accord *Rowbottom v. State,* 105 Nev. 472, 480, 779 P.2d 934, 939 (1989).

[21]*Alward,* 112 Nev. at 154, 912 P.2d at 252.

[22]114 Nev. at 1082 n.1, 968 P.2d at 323 n.1. Rosky also argues that the district court should have considered his alleged intoxication as part of the objective custody analysis. However, his briefs cite no authority for this proposition, and our research reveals none.

Rosky was not under formal arrest and the detectives informed him that his participation was voluntary. They also advised him that he was free to leave at any time. Rosky was not handcuffed, could have moved freely about during questioning and voluntarily responded to the inquiries. Further, while the interview lasted over two hours, Rosky could have called a break during the questioning and in fact did take an unaccompanied ten-minute break outside of the station at the suggestion of one of the detectives. Upon returning from the break, detectives once again informed Rosky that he was not under arrest and asked if he still wanted to talk to them. Rosky continued talking to detectives and eventually admitted to consensual intercourse with CJW, involving only slight penetration. While the detectives used mild forms of deception during the taped statement, confronted Rosky with their belief that he was guilty and arrested Rosky after the interview, our review of the video-taped statement reveals no use of ''strong arm'' or impermissibly coercive tactics. In fact, the interrogation techniques used were highly professional in their execution. These facts militate against indicia of arrest.

We also conclude that the length and form of questioning depicted on the tape confirm that Rosky was not in custody when he ultimately admitted to consensual sex with CJW.

### Voluntariness

Rosky also contends that, due to his intoxication and deception used by the detectives, his statement was involuntarily given. Unlike the objective custody analysis, the voluntariness analysis involves a subjective element as it logically depends on the accused's characteristics.[23] In this context, the prosecution has the burden of proving by a preponderance of the evidence that the statement was voluntary,[24] i.e., that ''the defendant's will was [not] overborne.''[25] ''[A] confession is involuntary if it was coerced by physical intimidation or psychological pressure.''[26] Several factors are relevant in deciding whether a suspect's statements are voluntary: '' '[t]he youth of the accused; his lack of education or his low

[23]See Yarborough, 541 U.S. at 667-68 (recognizing that subjective inquiry that applies to voluntariness determination does not apply to custody determination).

[24]See Lego v. Twomey, 404 U.S. 477, 489 (1972).

[25]Lynumn, 372 U.S. at 534.

[26]Brust v. State, 108 Nev. 872, 874, 839 P.2d 1300, 1301 (1992).

intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.' ''[27] A suspect's prior experience with law enforcement is also a relevant consideration.[28]

We conclude that Rosky's pre-arrest statements to police were voluntarily given. First, when asked if he was too intoxicated to be interviewed, Rosky clearly stated that ''oh yeah, I'm coherent, I'm fine.''[29] Second, the slight subterfuges used to elicit Rosky's confession were appropriate. Third, in its totality, the videotape of the interrogation indicates that Rosky tried to deflect the accusations, clearly attempted to use semantical dodges to mislead the detectives, and ultimately, albeit reluctantly, voluntarily admitted to consensual sexual misconduct with CJW. Accordingly, we conclude that the interrogating officers did not overbear Rosky's will.

In light of the above, and applying the standards of review set forth in *Thompson v. Keohane*[30] and *Miller v. Fenton*,[31] we conclude that Rosky was not in custody for *Miranda* purposes when he gave his statement to police and that the resulting confession was voluntarily given. Accordingly, the district court properly admitted the videotaped interview into evidence.

*Prior bad acts*

Evidence of prior bad acts is ''not admissible to prove the character of a person in order to show that he acted in conformity therewith.''[32] However, prior bad act evidence may be admissible for other purposes, such as to show ''motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.''[33] The improper admission of bad act evidence is common

---

[27]*Alward,* 112 Nev. at 155, 912 P.2d at 252 (quoting *Passama v. State,* 103 Nev. 212, 214, 735 P.2d 321, 323 (1987)).

[28]*See Lynumn,* 372 U.S. at 534 (considering defendant's lack of experience with the criminal law in determining voluntariness of confession).

[29]*See Kirksey v. State,* 112 Nev. 980, 992, 923 P.2d 1102, 1110 (1996) (stating that a confession is inadmissible based upon intoxication only if the accused is intoxicated to the extent of being incapable of understanding the meaning of his or her comments).

[30]516 U.S. 99 (1995).

[31]474 U.S. 104 (1985).

[32]NRS 48.045(2).

[33]*Id.; see Richmond v. State,* 118 Nev. 924, 932, 59 P.3d 1249, 1254 (2002).

grounds for reversal.[34] As we stated in *Braunstein v. State,* "[p]rior bad act evidence forces the accused to defend himself against vague and unsubstantiated charges and may result in a conviction because the jury believes the defendant to be a bad person."[35]

A presumption of inadmissibility attaches to all prior bad act evidence.[36] In order to overcome the presumption, the prosecutor must request a hearing[37] and establish, under *Tinch v. State,* that "(1) the [prior bad act] is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."[38] "The trial court's determination of whether to admit or exclude such evidence will not be disturbed on appeal absent manifest error."[39] However, "[t]his court has generally held inadmissible prior acts that are remote in time and involve conduct different from the charged conduct."[40]

As a result of two separate *Petrocelli* hearings, the district court ultimately admitted evidence that, some 10 years previous, Rosky fondled and digitally penetrated a 12-year-old girl, JLB, in California. The district court ruled the prior bad act admissible as proof of a common scheme or plan and modus operandi. At trial, the district court gave limiting instructions to the jury concerning the limited use of the bad act evidence on 3 occasions: (1) after JLB's mother testified on direct examination, (2) after JLB testified on direct examination, and (3) during jury instructions. These instructions, however, did not mirror the *Petrocelli* rulings because, after both JLB and her mother testified on direct examination, the district court instructed the jury that the evidence was only relevant to show a common scheme or plan.[41] On neither occasion did the

---

[34]*Braunstein v. State,* 118 Nev. 68, 73, 40 P.3d 413, 417 (2002).

[35]*Id.*

[36]*Tavares v. State,* 117 Nev. 725, 731, 30 P.3d 1128, 1131 (2001).

[37]*See Petrocelli v. State,* 101 Nev. 46, 51-52, 692 P.2d 503, 507 (1985).

[38]113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997); *see also Tavares,* 117 Nev. at 731, 30 P.3d at 1131 (" 'It is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' " (quoting *Berger v. United States,* 295 U.S. 78, 88 (1935))).

[39]*Walker v. State,* 116 Nev. 442, 446, 997 P.2d 803, 806 (2000).

[40]*Braunstein,* 118 Nev. at 73, 40 P.3d at 417.

[41]After JLB's mother testified on direct examination, the district court stated:

> [T]his is not testimony elicited to prove Mr. Rosky's character or that he acted consistent with any part of this type of character, but it is admitted solely for the purpose of the state attempting to prove a common scheme or plan, so it's for a limited purpose.

district court mention the use of such evidence to show modus operandi. Ultimately, jury instruction 37 directed the jury to consider the bad act evidence ''for the purpose of proving the defendant's common scheme or plan or his modus operandi and for no other purpose[s].''

### Common scheme or plan

The common scheme or plan exception to the rule against the admissibility of character/propensity evidence requires that both the prior bad act and the charged crime be an '' 'integral part of an overarching plan explicitly conceived and executed by the defendant.' ''[42] '' ' ''The test is not whether the other offense has certain elements in common with the crime charged, but whether it tends to establish a *preconceived plan* which resulted in the commission of that crime.'' ' ''[43] In fact, as this court noted in *Richmond v. State,* even a sexual assault perpetrated in the same location and manner a month before the assault at issue may not establish a common plan.[44]

We cannot conclude that the instant offense and the prior bad acts were part of a single preconceived overarching plan that resulted in improper sexual contact with CJW. These crimes were independent of one another, and neither could be planned until each victim came within reach. Finally, the prior bad act took place some eight years before the instant event. We therefore conclude that the district court abused its discretion in admitting evidence of Rosky's prior bad acts as evidence of a common scheme or plan.

### Modus operandi

As this court explained in *Mortensen v. State,* modus operandi evidence falls within the identity exception to NRS 48.045(2).[45]

---

After JLB testified on direct examination, the district judge stated:

> You may not consider this testimony as proof of Mr. Rosky's character or that he acted in conformance therewith with regard to the incidents allegedly occurring in Reno. The State is only allowed to bring in this testimony to establish a common scheme or plan.

[42]*Richmond,* 118 Nev. at 933, 59 P.3d at 1255 (quoting 1 *McCormick on Evidence* § 190, at 661 (John W. Strong ed., 5th ed. 1999)).

[43]*Id.* (quoting *Nester v. State of Nevada,* 75 Nev. 41, 47, 334 P.2d 524, 527 (1959) (quoting 1 John Henry Wigmore, *Wigmore on Evidence* § 300 (2d ed. 1923))).

[44]*Id.* at 934, 59 P.3d at 1255.

[45]115 Nev. 273, 280-81, 986 P.2d 1105, 1110 (1999).

Generally, modus operandi evidence is proper in "situations where a positive identification of the perpetrator has not been made, and the offered evidence establishes a signature crime so clear as to establish the identity of the person on trial."[46]

Rosky's identity was not at issue during the trial. CJW clearly identified him in court on multiple occasions and the police had no doubt that Rosky was the proper suspect. Going further, Rosky admitted in his statement to his interactions with CJW. Thus, under the third prejudice/probative value prong of *Tinch,* we conclude that the district court abused its discretion in allowing the jury to consider the prior bad act with JLB as evidence of "modus operandi."

As discussed above, the prior bad act was not relevant under either the common scheme or plan or the modus operandi exceptions to NRS 48.045(2). We further note that the prior bad act evidence was not admissible to prove intent or motive under NRS 48.045(2) because the evidence likewise did not satisfy the third prong of *Tinch.*[47] JLB's testimony improperly bolstered the prosecution's relatively weak case in support of the sexual assault charges at issue and involved events remote in time to the allegations involving CJW. As discussed below, Rosky did not confess to nonconsensual sexual misconduct, *i.e.,* sexual assault, with CJW. And, as noted, the district court's limiting instructions were deficient in their content.[48]

Most importantly, the State argued in its opening statement that "the evidence [against Rosky] will show that this is really a case of two victims separated by time and distance." We conclude that, when combined with the prosecutor's opening statement, the cautionary instructions left the evidence with limited probative value,

---

[46]*Id.* at 280, 986 P.2d at 1105.

[47]*See* 113 Nev. at 1176, 946 P.2d at 1064-65.

[48]*See Tavares,* 117 Nev. at 733, 30 P.3d at 1133 (holding that trial court must give the limiting instruction at least twice: (1) immediately before the introduction of the evidence and (2) at the end of trial). Here, the two instructions given during the trial failed to mention modus operandi as one of the "other" uses of the evidence under NRS 48.045(2).

The State also argues that the prior bad act evidence was relevant to show knowledge. We disagree. *See Dougherty v. State,* 86 Nev. 507, 509, 471 P.2d 212, 213 (1970) (stating that if the prosecution can establish knowledge without reference to a prior criminal act, the prejudicial effect of the bad act evidence outweighs its probative value). We further note that the district court never instructed the jury that the JLB evidence was relevant to show Rosky knew or should have known that CJW was incapable of resisting the nature of Rosky's conduct. *See Tavares,* 117 Nev. at 733, 30 P.3d at 1133.

to wit: that Rosky acted in conformity with a propensity for sexual aberration, here, the molestation of young women.[49] Thus, the bad act testimony improperly placed Rosky's character at issue.

Errors in the admission of evidence under NRS 48.045(2) are subject to a harmless error review.[50] Our review of the videotaped statement reveals that, among other admissions, Rosky essentially confessed to indecent exposure. Therefore, we conclude that the above errors are harmless beyond a reasonable doubt with respect to the conviction of indecent exposure. We therefore affirm the judgment of conviction of indecent exposure.

We cannot, however, on this record, conclude that the district court's errors were harmless with regard to Rosky's sexual assault conviction. First, although Rosky also effectively confessed to the commission of a statutory sexual seduction,[51] which includes consensual sexual congress between an adult and a minor under the age of 16 years, he did not confess to forcible or otherwise nonconsensual sexual assault. Second, he was charged with sexual assault, not statutory sexual seduction. Third, the consent issue was litigated through Rosky's videotaped statement and CJW's testimony,[52] and Rosky's statement is in clear conflict with CJW's testimony on that very point. And fourth, the consent issue was central to the State's prosecution for sexual assault rather than the less severe offense of statutory sexual seduction. Thus, in this case, overwhelming evidence does not support the sexual assault conviction. Accordingly, the erroneous introduction of the highly prejudicial evidence concerning JLB was not harmless beyond a reasonable doubt. We therefore reverse Rosky's sexual assault conviction and remand for a new trial on that charge.

### Flight instruction

Prior to trial, Rosky was released on bail, failed to appear and a bench warrant was issued for his arrest. Authorities eventually located Rosky in Mexico and successfully obtained extradition. At

---

[49]*See Braunstein,* 118 Nev. at 75, 40 P.3d at 418 (renouncing the legal proposition stated in *McMichael v. State,* 94 Nev. 184, 189, 577 P.2d 398, 401 (1978), that evidence showing an accused possesses a propensity for sexual aberration is relevant to the accused's intent); *see also Richmond,* 118 Nev. at 936, 59 P.3d at 1257 (MAUPIN, J., concurring and dissenting).

[50]*See Richmond,* 118 Nev. at 934, 59 P.3d at 1255-56.

[51]*See* NRS 200.364; NRS 200.368.

[52]Rosky did not testify at trial.

trial, the court instructed the jury on flight. Citing no Nevada or federal authority, Rosky argues that the district court should not have given a flight instruction over the objection of defense counsel.

We conclude that Rosky's argument is without merit. First, under Nevada law, a district court may properly give a flight instruction if the State presents evidence of flight and the record supports the conclusion that the defendant fled with consciousness of guilt and to evade arrest.[53] Second, the testimony of court personnel concerning Rosky's failure to appear, the bench warrant transcripts, and several of Rosky's post-extradition taped jailhouse telephone conversations provided substantial evidence that Rosky fled to Mexico to avoid prosecution. Third, the taped telephone conversations indicate that, while he was in Mexico, Rosky considered assuming a different identity and planned to abscond to Brazil where he could not be extradited. We find these conversations to be sufficient for a jury to infer consciousness of guilt, and thus, the district court committed no error in its ''flight'' instructions to the jury.[54] Accordingly, given the proper evidentiary predicate, the district court may again instruct the jury on remand concerning Rosky's flight to Mexico.

## CONCLUSION

The district court erroneously admitted prior bad act evidence to show a common plan or scheme and as evidence of modus operandi. This error was harmless as to the indecent exposure conviction. However, overwhelming evidence does not support Rosky's conviction for sexual assault. Therefore, we affirm the judgment of conviction of indecent exposure, reverse the judgment of conviction of sexual assault and remand this matter to the district court for proceedings consistent with this opinion.

DOUGLAS and PARRAGUIRRE, JJ., concur.

---

[53]See *Walker v. State,* 113 Nev. 853, 870-71, 944 P.2d 762, 773 (1997).

[54]Rosky also cites the Oklahoma Criminal Appeals decision in *Mitchell v. State,* 876 P.2d 682 (Okla. Crim. App. 1993), and argues that giving a flight instruction is improper if the defendant does not refute the state's allegation of flight. We reject this argument, noting that subsequent Oklahoma decisions have clarified ''that the rule in *Mitchell* was an interpretation and application of state law'' and does not relate to any constitutional right. *Richie v. State,* 908 P.2d 268, 277 (Okla. Crim. App. 1995).