An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT GEOFFREY DAVIS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61529

**FILED**

JUN 24 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER REVERSING AND REMANDING*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with use of a deadly weapon. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

After a day marked by violent arguments and drinking, Robert Geoffrey Davis shot to death his mentally ill brother. The police arrested Davis and interviewed him for several hours at the station. Following that interview, officers drove Davis to the Carriage Inn Motel, where they left him to sleep in one of the motel's rooms. Seven hours later the officers returned to interview Davis at the motel, and at the termination of that interview placed him under arrest. Davis was charged with and ultimately convicted of first-degree murder with use of a deadly weapon.

Davis was never informed of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). On Davis's motion, the district court suppressed his stationhouse statements but permitted those that he made at the Carriage Inn, finding that he was not "in custody" during the motel room interview within the meaning of *Miranda*. Davis does not challenge the district court's factual findings but appeals their legal effect, so we review de novo the district court's determination of custody at the

SUPREME COURT
OF
NEVADA

(O) 1947A

14-20749

Carriage Inn. *See Lamb v. State*, 127 Nev. ___, ___, 251 P.3d 700, 703 (2011); *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

Granted, the Carriage Inn interview was conducted in a motel room that the police had left Davis in alone, with the door open, for several hours. But, Davis arrived there as the prime suspect in a murder investigation, escorted by several officers, wearing police-issued clothing, and following an unconstitutional interrogation in police custody. His police escort met with the motel's manager and obtained the room key, walked Davis to and inside the room, and then stationed undercover officers outside. The hour-long interview was conducted later that same evening by two officers, in the same room with the door closed, and Davis was arrested immediately upon its termination. Given these circumstances, a reasonable person in Davis's position would not have perceived himself free to terminate the Carriage Inn interview. *See Alward v. State*, 112 Nev. 141, 155, 912 P.2d 243, 252 (1996) (holding that for the purposes of a custody determination there are four relevant factors: "(1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning") *overruled on other grounds by Rosky v. State*, 121 Nev. 184, 191 n.10, 111 P.3d 690, 694 n.10 (2005).

Thus, Davis was "in custody" at the time of his interview at the Carriage Inn, and the district court erred by admitting the statements he made there. *Miranda*, 384 U.S. at 444. On appeal the State did not provide this court a full transcript or recording of the interview or even argue that the district court's inclusion of the statements, if error, was harmless. Absent guidance from the State as to the complete contents of the interview and the effect of its wrongful admission, we cannot say that

the error was harmless "beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967); *Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 477 (2006). Thus, we reverse Davis's conviction and remand.

Given this conclusion we need not reach Davis's remaining challenges, though we take this opportunity to note our concern with the use, in a murder case, of State's jury instruction 15, which defined "wilfully" as: "simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate the law, or injure another." This seemingly contravenes Nevada law as to the requirements of wilful first-degree murder, which the State properly identified in its instruction 20 as requiring the "intent to kill." *See Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000); *see also Cal. Jury Instr. Crim.* 8.20 (2008) (explaining that murder is in the first degree if it "was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill"). But Davis's counsel in the trial court stated he had no objection to the offered instructions, and it is possible to reconcile instruction 15 (as applying to volitional conduct, generally) with instruction 20 (as applying to first-degree murder, specifically). Still, this court was struck by the State's acknowledgement at oral argument that it routinely offered these conflicted instructions in first-degree murder cases. And while we cannot reverse for plain error here, we caution the State against continuing this practice. *See Cal. Jury Instr. Crim* 1.20, *use note* (2014) (noting that an instruction identical to the State's instruction 15 "should not be given where specific intent is an element of the crime").

Therefore we ORDER the judgment of the district court REVERSED, AND REMAND this matter to the district court for proceedings consistent with this order.

                                                  , J.
Pickering

                                                  , J.
Parraguirre

                                                  , J.
Saitta

cc:    Hon. Scott N. Freeman, District Judge
        Karla K. Butko
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk