An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

YOVANI HERNANDEZ MARIN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63571

**FILED**

MAY 29 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF REVERSAL AND REMAND*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of robbery with use of a deadly weapon, battery with use of a deadly weapon, burglary while in possession of a firearm, grand larceny auto, and possession of a stolen vehicle. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

Appellant Yovani Marin Hernandez contends that his conviction should be reversed because (1) the testimonies of Officer Eric Leavitt and Officer James Monroe contained statements obtained in violation of his right to counsel, (2) the district court refused to give his proposed jury instructions, (3) there was insufficient evidence to sustain his convictions for grand larceny auto and possession of a stolen vehicle, (4) double jeopardy prohibits simultaneous convictions for grand larceny auto and possession of a stolen vehicle, (5) double jeopardy prohibits simultaneous convictions for robbery of car keys and a phone and grand larceny auto, and (6) the district court sentenced him for burglary while in possession of a firearm although the jury did not convict him of burglary while in possession of a firearm. We conclude that the issue of whether the officers' testimonies were admitted in violation of Marin's

SUPREME COURT
OF
NEVADA

(O) 1947A

15-16405

constitutional right to counsel is dispositive, and therefore address only this issue on appeal.

## FACTS

During the early morning hours of October 3, 2012, Marin was involved in a physical altercation with Jesus Villasenor Melgarejo in Villasenor's home, which left Villasenor injured. According to Marin, the confrontation began after Villasenor made unwanted sexual advances toward him while he was spending the night at Villasenor's home. Marin contends that when he rejected Villasenor's advances, Villasenor would not allow him to leave. Thus, he was defending himself and providing for his escape when he injured Villasenor and took Villasenor's car keys, cellular phone and vehicle. In contrast, Villasenor contends that Marin entered his home through a back door, brandished a gun and a knife, and demanded money and jewelry. When he told Marin he did not have money or jewelry, Marin attacked him and fled with his belongings.

The day after the alleged robbery, Officers Jay Simpson and Eric Leavitt went to Marin's parents' home in search of Marin. Upon their arrival, the officers discovered Marin driving Villasenor's vehicle. Officer Simpson took Marin into custody, handcuffed him, and read Marin his *Miranda* rights. Officer Simpson then began to interrogate Marin. After a brief interrogation, Marin stopped answering questions and Officer Simpson placed Marin in the back of his patrol vehicle. When Officer Simpson retrieved Marin from the patrol vehicle, Marin asked, "When can I talk to a lawyer?" Immediately after making the statement, a handcuffed Marin ran, but was recaptured by Officer Simpson. Marin was again placed in the back of the patrol vehicle. At that point, Officer Simpson chose not to resume his interrogation of Marin.

 

Later, Officer James Monroe arrived at the scene and received permission from Officers Simpson and Leavitt to interrogate Marin. Officer Monroe then questioned Marin about the location of a gun thought to have been used in the robbery.

At trial, Officer Monroe testified about what he learned from his interrogation of Marin. Specifically, he testified that Marin told the officers he wanted to help them locate the gun but did not want anyone to get hurt. Additionally, Officer Monroe testified that Marin told him the gun was black and no longer in the car, but in North Las Vegas at an apartment complex. Finally, Officer Monroe testified to following Officers Leavitt and Simpson in their patrol vehicle because Marin, who was in their custody, was planning to show the officers where the gun was located.

Officer Leavitt also testified to information gathered from Marin after Marin asked when he could speak to a lawyer. Officer Leavitt testified that Marin was planning to show the officers where the gun was located. He further testified that as they were driving, Marin identified two sets of apartments, but whenever officers proceeded in the direction of the apartment, Marin told them that it was in a different direction. Officer Leavitt said that eventually they stopped searching for the gun and drove Marin to jail.

*DISCUSSION*

This court reviews "'the district court's factual finding concerning the words a defendant used to invoke the right to counsel' for clear error, and '[w]hether those words actually invoked the right to counsel' de novo." *Carter v. State*, 129 Nev. ___, ___, 299 P.3d 367, 370 (2013) (alteration in original) (quoting *United States v. Ogbuehi*, 18 F.3d

Supreme Court
OF
Nevada

(O) 1947A

807, 813 (9th Cir. 1994)); *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

*Invocation of Right to Counsel*

      *Miranda v. Arizona* requires government officials conducting custodial interrogations to advise suspects of their right to remain silent and their right to have an attorney present. 384 U.S. 436, 479 (1966). When a person invokes his or her right to counsel under *Miranda*, that person can no longer be questioned or interrogated until an attorney is provided. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)).

      The parties agree to the relevant facts. The words Marin used to invoke his right to counsel were: "When can I talk to a lawyer?" Thus, we need not consider that issue. Instead, we must determine whether the use of those words, when examined in their context, actually invokes the right to counsel. Marin argues that his request for an attorney was unequivocal and that the district court committed prejudicial error by admitting the fruits of the interrogation that followed his request. The State contends that Marin's request was made equivocal by the act of running and that any error was harmless because the officers' testimonies about the firearm did not lead to a conviction of any of the firearm charges.

      In *Carter*, we recognized that the words "Can I get an attorney?" amounted to an unequivocal request for counsel under the circumstances. 129 Nev. at ___, 299 P.3d at 369; *see also Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) (explaining that "Can I get an

SUPREME COURT
OF
NEVADA

(O) 1947A

4

attorney right now, man?" was an unambiguous request when considered together with two other questions regarding counsel); *People v. Harris*, 552 P.2d 10, 11–12 (Colo. 1976) (holding that "When can I get a lawyer?" was unambiguous). We determined that no circumstances present would have suggested to a reasonable officer that Carter was requesting anything but the aid of an attorney because "[t]here were no other words modifying the statement . . . like 'might,' 'maybe,' 'perhaps,' or 'should' [and] in [no] way [did Carter] suggest he was unsure of whether he wanted an attorney." *Carter*, 129 Nev. at ___, 299 P.3d at 371. We further held that Carter's statement asserting that he was merely "concerned" about an attorney, made after he unambiguously invoked his right to counsel, "[did] nothing to alter our decision." *Id.* at ___, 299 P.3d at 371; *see Smith v. Illinois*, 469 U.S. 91, 100 (1984) ("[U]nder the clear logical force of settled precedent, an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.").

Applying *Carter* to the circumstances here, we conclude that Marin made an unequivocal request for an attorney. First, Marin's words represented an unambiguous request for an attorney. As in *Carter*, Marin did not use any modifying words and did not suggest that he was unsure of whether he wanted an attorney. His words were explicit. Additionally, Marin's sprint shortly thereafter did nothing to alter his original unambiguous request. *See Smith*, 469 U.S. at 100. His post-request act can be likened to Carter's post-request statement asserting that he was merely "concerned" about an attorney. Although we recognize the factual difference between Marin's act of running and Carter's statement expressing concern, we reach the same conclusion.

Thus, when considering both the words Marin used and his post-request act of running, we conclude that Marin made an unequivocal request for an attorney and that request should have been honored. Marin's statements, made without having access to counsel, violated the basic tenets of *Miranda* and were inadmissible.

*Harmless Error Analysis*

*Miranda* violations may be considered harmless, depending on the context of the case. *Guyette v. State*, 84 Nev. 160, 168, 438 P.2d 244, 249 (1968). We cannot say here that the officers' testimonies disclosing information obtained in violation of Marin's *Miranda* rights were harmless beyond a reasonable doubt. *See Carter*, 129 Nev. at ___, 299 P.3d at 372 (requiring admission of confession obtained in violation of *Miranda* to be harmless *beyond a reasonable doubt* (emphasis added)). It is possible that the erroneous admission of the officers' testimonies contributed to Marin's conviction. A reasonable jury may have interpreted the officers' testimonies to Marin's statements acknowledging the location of the gun as a confession to the crimes alleged, especially given that Villasenor claimed Marin robbed him at gunpoint and Marin claimed that he did not have a gun. In this context, where the facts of the alleged robbery are intertwined with possession of the gun, the extent of the jury taint cannot be known. Therefore, the fruit of the interrogation conducted after Marin unequivocally invoked his right to counsel was admitted in error and was not harmless beyond a reasonable doubt.

Based on the foregoing, we ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Valerie Adair, District Judge
       Clark County Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk