# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL RUDOLPH RODRIGUEZ,
A/K/A MICHAEL A. RODRIGUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 82135

FILED

MAY 12 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _S. Young_
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit murder, burglary while in the possession of a deadly weapon, first-degree murder with the use of a deadly weapon, and possession of a firearm by a felon.[1] Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge.

Appellant Michael Rodriguez argues the district court erred in denying his motion to suppress statements he made to detectives on December 3 and 8, 2010. We disagree and affirm the judgment of conviction.

First, Rodriguez argues his December 3 statement is inadmissible because, although he was not yet under arrest, he was in custody for purposes of *Miranda* and the detectives did not read him his *Miranda* rights. He points out that the police stopped him on the side of the freeway, transported him to a homicide office in handcuffs, interrogated

---

[1]The Honorable Douglas W. Herndon, Justice, presided over the district court suppression hearing at issue in this case and did not participate in the decision of this appeal.

him in a small room, and did not tell him he was free to leave. We review de novo the district court's determination as to whether a statement was obtained in violation of *Miranda*. *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005). "*Miranda* warnings are required when a defendant is subjected to a custodial interrogation." *Carroll v. State*, 132 Nev. 269, 281, 371 P.3d 1023, 1032 (2016) (internal quotation marks omitted). A defendant is in custody and entitled to a *Miranda* warning if a reasonable person in the circumstances would not believe he was free to leave. *Silva v. State*, 113 Nev. 1365, 1370, 951 P.2d 591, 594 (1997). We consider the totality of the circumstances to determine whether a defendant is in custody, including the interrogation site, any objective indicia of arrest, and the length and form of the questioning. *Belcher v. State*, 136 Nev. 261, 264, 464 P.3d 1013, 1021 (2020).

> Objective indicia of arrest include:
>
> (1) whether the suspect was told that the questioning was voluntary or that he was free to leave; (2) whether the suspect was not formally under arrest; (3) whether the suspect could move about freely during questioning; (4) whether the suspect voluntarily responded to questions; (5) whether the atmosphere of questioning was police-dominated; (6) whether the police used strong-arm tactics or deception during questioning; and (7) whether the police arrested the suspect at the termination of questioning.

*State v. Taylor*, 114 Nev. 1071, 1082 n.1, 968 P.2d 315, 323 n.1 (1998); *see also Silva*, 113 Nev. at 1369-70, 951 P.2d at 594 (deciding a defendant was not in custody simply by virtue of talking to detectives at a police station where the defendant voluntarily accompanied police to the station, defendant was able to talk to his sister when he asked to, detectives told

SUPREME COURT
OF
NEVADA

(O) 1947A

him that he was not in custody, and questioning lasted approximately one to two hours).

We acknowledge this case presents a close call, but ultimately we conclude, based on the record, that the district court did not err, as the objective indicia of arrest weigh in favor of finding Rodriguez was not in custody when detectives interviewed him on December 3. Detectives surveilled Rodriguez and stopped him while he was driving on the freeway. They sealed and towed his car, which they impounded and searched pursuant to a warrant. Meanwhile, detectives handcuffed Rodriguez and transported him in the front seat of a police vehicle to the homicide office for an interview. Detectives removed Rodriguez's handcuffs once he arrived at the station, and detectives informed Rodriguez that he was not under arrest multiple times. Before the interview began, Detective Williams confirmed Rodriguez was speaking with him voluntarily. Rodriguez likewise told the detectives that he knew he was not under arrest, and his actions during the interview—such as calling his fiancée and asking her to have vodka and orange juice ready for him when he got home—demonstrated Rodriguez understood that he was not under arrest. Rodriguez was freely allowed to take bathroom and smoking breaks during his interview, and Detective Williams reminded Rodriguez that he could leave if he wanted. Rodriguez repeatedly stated that he would answer any questions and did not ask to leave and even agreed to provide the detectives with his DNA. Detectives interviewed Rodriguez in an interrogation room with the door open, and the interview was a back-and-forth conversation between Rodriguez and the detectives. The detectives also brought Rodriguez water, allowed him to keep and use his phone, and gave him cigarettes. Although the fifth and sixth factors arguably favor Rodriguez

because Detective Anderson's interview was forceful and intense, her line of questioning occurred at the end of the interview, after Rodriguez had already provided his statement, and her strong-arm tactic did not cause Rodriguez to reveal any more information. Finally, the detectives did not arrest Rodriguez at the termination of questioning. Thus, ultimately five factors weigh in favor of the State, and, considering the situation as a whole, we agree with the district court that Rodriguez was not under arrest and voluntarily spoke to detectives on December 3.[2]

Second, Rodriguez contends the December 3 statement is inadmissible as fruit of an illegal arrest. A seizure occurs whenever an officer "accosts an individual and restrains his freedom to walk away." *Arterburn v. State*, 111 Nev. 1121, 1125, 901 P.2d 668, 670 (1995) (internal quotation marks omitted). A police officer must have an articulable suspicion that the suspect has committed a crime in order to seize that suspect. *Id.* Here, the detectives seized Rodriguez when they pulled him over, but the detectives had an articulable suspicion that Rodriguez was involved in the crime because they knew Rodriguez's car matched a witness's description of the getaway car and that Rodriguez had been texting the victim's widow shortly before the murder. This seizure does not evolve into an arrest for the same reasons explained above. We therefore conclude an illegal arrest did not occur here. Moreover, any error in admitting the December 3 statement would be harmless in light of Rodriguez's subsequent confession and the additional evidence admitted at trial, such as his suspicious text messages to, and relationship with, the

---

[2]Even though the district court did not expressly address these factors on the record, the record supports the district court's ultimate conclusion.

victim's widow; statements made to a coworker shortly before the crime about an expected insurance payout; and his alibi witnesses testifying against him.

Third, Rodriguez argues that his December 8 confession was involuntary because he gave it while suffering from drug withdrawals and because, prior to recording the statement, detectives falsely promised immunity in return for the confession. "A valid waiver of rights under *Miranda* must be voluntary, knowing, and intelligent." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006). We review the totality of the circumstances to determine whether the defendant has waived his *Miranda* rights. *Id.* "[V]oluntariness determinations present mixed questions of law and fact subject to this court's de novo review." *Rosky*, 121 Nev. at 190, 111 P.3d at 694. We consider a defendant's confession involuntary if the confession "was coerced by physical intimidation or psychological pressure." *Id.* at 194, 111 P.3d at 696 (internal quotation marks omitted).

We conclude Rodriguez's alleged withdrawal symptoms did not render his confession involuntary because the record shows Rodriguez was coherent and able to recall facts in great detail, and the record does not suggest Rodriguez was struggling with severe withdrawal symptoms. *See Pickworth v. State*, 95 Nev. 547, 549, 598 P.2d 626, 627 (1979) (deciding a defendant's confession was voluntary where the defendant, though suffering from drug withdrawal, was "coherent, able to recall facts in great detail, and showed no signs of discomfort"). Moreover, Rodriguez later testified that his December 8 statement was accurate. And even assuming *arguendo* Rodriguez was under severe withdrawal symptoms, the circumstances overall do not indicate the confession was involuntary where Rodriguez initiated the meeting with Detective Williams and the record

shows Rodriguez did so because he had decided to confess. And nothing in the record shows the detectives promised Rodriguez immunity in return for his confession. Rodriguez testified detectives told him "the DA's willing to play ball," but he later admitted on cross-examination that detectives never said the district attorney was willing to grant him immunity. We will not reweigh witness credibility on appeal where the district court, as the finder of fact, heard the witness's testimony and formed a conclusion that is supported by the record. *See State v. Love*, 109 Nev. 1136, 1139, 865 P.2d 322, 324 (1993) (declining to reweigh witness credibility).

Fourth, Rodriguez argues that the detectives violated *Missouri v. Seibert*, 542 U.S. 600 (2004), in regards to his December 8 confession because the detectives elicited his confession, *Mirandized* him, and then recorded his confession. The record shows no *Seibert* violation occurred here where Detective Williams *Mirandized* Rodriguez on December 7, and the alleged un-*Mirandized* conversation occurred on December 8. *See Seibert*, 542 U.S. at 613-14 (explaining that "when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and deprive the defendant of knowledge essential to his ability to understand the nature of his rights" (internal quotation marks omitted)). Rodriguez does not argue that the December 7 warning was stale by the time he confessed to Detective Williams, and the record here does not suggest that warning—offered approximately eight hours before the confession—was stale where Rodriguez remained in custody during that time. *Cf. Koger v. State*, 117 Nev. 138, 142-44, 17 P.3d 428, 431-33 (2001) (considering the time between the warning and the interview, as well as the locale where each occurred).

For the foregoing reasons, the district court did not err in denying Rodriguez's motion to suppress. Accordingly, we ORDER the judgment of the district court AFFIRMED.

_____, J.
Silver

_____, J.
Cadish

_____, J.
Pickering

cc:    Hon. Tierra Danielle Jones, District Judge
Law Office of Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk