SHELLI ROSE DEWEY, AKA SHELLI ROSE CASTLE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 46854

November 1, 2007                                    169 P.3d 1149

[Rehearing denied November 30, 2007]

---

[33]We have considered the parties' other arguments and conclude that they lack merit.

*Richard F. Cornell*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Gary D. Woodbury*, District Attorney, and *Robert J. Lowe* and *Alvin R. Kacin*, Deputy District Attorneys, Elko County, for Respondent.

Before PARRAGUIRRE, HARDESTY and SAITTA, JJ.

## OPINION

*Per Curiam:*

In this opinion, we consider whether the assertion of the Fifth Amendment right to remain silent under *Miranda v. Arizona*, by itself, is sufficient to also invoke the right to counsel that *Miranda* established as an additional means of securing and protecting the Fifth Amendment privilege against self-incrimination.[1] We conclude that unless a suspect's assertion of the right to remain silent includes a clear, unequivocal, and unambiguous request for an attorney, it is not an invocation of the right to counsel under *Miranda*; thus, a suspect's exercise of the right to remain silent under *Miranda*, without more, does not operate as a request for counsel. We also conclude that the police may resume questioning a suspect who has invoked her right to remain silent only if they have "scrupulously honored" the suspect's prior exercise of her right to terminate questioning and issue a new set of *Miranda* warnings prior to reinitiating further interrogation.

### FACTS

In the early morning hours of September 12, 2004, Elko Police answered a hysterical "911" call from appellant Shelli Rose Dewey reporting that her husband, Steven, had been stabbed. During the call, Dewey commented three times that she did not know who stabbed Steven.

At the scene, Dewey appeared to be intoxicated and was marginally intelligible. Dewey told the police that her husband had been stabbed. The police looked inside the Deweys' pickup truck

---

[1]384 U.S. 436, 467-74 (1966).

as well as the surrounding area for a weapon but could not locate one.

Several witnesses reported that Dewey and Steven had been drinking and creating a disturbance a few hours before the stabbing. At some point, the bartender asked the couple to leave. About thirty minutes thereafter, a witness reported seeing them arguing in the parking lot. Another witness also reported hearing a loud argument, followed by hysterical crying. This witness investigated the "ruckus" and saw Dewey draped over Steven, who was lying on his back next to or in close proximity to the couple's truck. According to this witness, Dewey was in obvious distress, frantically saying, "Please don't die! Please don't die on me!"

Although not a suspect at the time, Dewey was taken to the Elko Police Station for an interview on the morning of Steven's death. Once at the police station, Dewey was informed that the interview was being recorded. Detective Larry Kidd of the Elko Police Department advised Dewey of her *Miranda* rights and asked if she understood what *Miranda* rights were. Dewey answered, "I think so." Detective Kidd then had Dewey read the *Miranda* rights card line by line. Dewey initialed each line.

Twice during the initial interview, Detective Kidd explained to Dewey that even if she decided to answer questions "without a lawyer present," she could still stop the interview at any time. After reading Dewey the *Miranda* rights, the detective again confirmed that she understood. Dewey then asked if she was a suspect. Detective Kidd told her that she was. During a brief colloquy, Dewey indicated that she did not want to speak to anyone:

> Dewey: Am I a suspect?
>
> [Detective] Kidd: Uh, yes ma'am you are a suspect. Would you just go ahead and write and read that again for me?
>
> Dewey: (inaudible).
>
> [Detective] Kidd: You don't want to talk to anybody?
>
> Dewey: No (inaudible).
>
> [Detective] Kidd: Okay, well if you don't want to answer any question then we won't talk about it. We can't talk to you about it okay.
>
> Dewey: And we'll go home. Take my kid back to the (inaudible). (Inaudible.)

The interview ended immediately after the last inaudible response, and Dewey was placed under arrest.

At the jail, approximately two hours after the first interview, other police officers initiated a discussion with Dewey. Before any questioning began, Officer Connie Bauers asked Dewey to read the *Miranda* warnings contained within a waiver form. Dewey again read and signed the waiver form. The officers again told Dewey she could end the interview at any time.

During the second interview, Dewey admitted four times that she had "hit" Steven. Dewey told the police that she held a knife in her hand with the handle pointing outward and the blade flat across her palm. Dewey told the police officers that she intended to punch Steven but instead hit him with the knife. Dewey said the knife might be in the couple's truck. Based upon these comments, the police obtained a warrant, searched the pickup truck, and found a nine-inch knife underneath one of the seats, precisely where Dewey said it "might" be.

The police attempted to interview Dewey the next day at the jail. However, this time, she clearly and unequivocally invoked her right to counsel. Accordingly, the interview immediately ceased.

Ultimately, the State charged Dewey with open murder with the use of a deadly weapon. On a motion to suppress, the district court found that Dewey refused to speak to the police during the first interview, but that she had not clearly invoked her right to counsel.

At trial, the jury convicted Dewey of one count of second-degree murder with the use of a deadly weapon. Dewey now appeals from the judgment of conviction and argues that the inculpatory statements she made during the second interview were taken in violation of her constitutional rights and should have been suppressed as involuntary. We disagree, and for the reasons stated below, we affirm Dewey's conviction.

## DISCUSSION

Dewey argues that her statements regarding the stabbing of Steven should have been suppressed on one or more of the following three grounds: (1) her statements were obtained in violation of her Fifth and Sixth Amendment rights under the United States Constitution, (2) her statements were obtained in violation of her Fifth Amendment right to remain silent, and (3) her statements were involuntary. We conclude that each of Dewey's arguments lack merit.[2]

*Right to counsel*

Dewey argues that when she answered, "No," to Detective Kidd's question, "You don't want to talk to anybody?" during the first interview, she invoked her right to counsel. Thus, she claims that her statements thereafter describing in a subsequent interview how she stabbed Steven were obtained in violation of her Fifth and

---

[2]Dewey also argues that the conviction is not supported by sufficient evidence, that the second-degree murder instruction (Jury Instruction No. 13) unconstitutionally reduced the State's burden of proof on the element of implied malice, and that the instruction defining "deadly weapon" (Jury Instruction No. 19) unconstitutionally relieved the State of its burden to prove an element of the deadly weapon enhancement. We have carefully considered these arguments and conclude that they lack merit.

Sixth Amendment rights. We disagree and conclude that substantial evidence supports the district court's determination that Dewey did not invoke her right to counsel during the first interview.

Initially, we note that Dewey's Sixth Amendment right to counsel was not at issue during the in-custody interrogation. The Sixth Amendment, which applies to the states through the Fourteenth Amendment,[3] provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."[4] As the United States Supreme Court has observed in *Fellers v. United States*, "[t]he Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated' " either " 'by way of formal charge, preliminary hearing, indictment, information, or arraignment.' "[5]

In this case, Dewey complains that she invoked and was deprived of her right to counsel during her in-custody interrogation, prior to the initiation of any adversarial judicial criminal proceedings. Dewey's right to have counsel present during that initial in-custody interrogation originates exclusively from the procedural safeguards that the Supreme Court adopted in *Miranda* to secure and protect the Fifth Amendment privilege against compulsory self-incrimination during the inherently coercive atmosphere of an in-custody interrogation. Thus, to the extent that Dewey complains that she was deprived of her Sixth Amendment rights during that interview, her argument is misplaced and without merit.

As noted, however, the *Miranda* decision does provide a suspect with a right to counsel as a means to protect and secure the Fifth Amendment privilege against compulsory self-incrimination. But police officers "have no obligation to stop questioning" a suspect under *Miranda* unless the suspect exercises the right to remain silent or makes an "unambiguous and unequivocal" request for an attorney.[6] A request for counsel must be, at minimum, "some statement that can reasonably be construed to be an expression of

---

[3] *Gideon v. Wainright*, 372 U.S. 335, 342-45 (1963) (stating that the Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment).

[4] U.S. Const. amend. VI.

[5] 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)); *see also Kaczmarek v. State*, 120 Nev. 314, 326, 91 P.3d 16, 25 (2004); *Barone v. State*, 109 Nev. 1168, 1170, 866 P.2d 291, 292 (1993).

[6] *Davis v. United States*, 512 U.S. 452, 461-62 (1994).

a desire for the assistance of an attorney."[7] The right to counsel "must be affirmatively invoked by the suspect" and requires more than an expression of one's desire to remain silent.[8] In the instant case, Dewey did not ask for an attorney by explicitly invoking her right to counsel until the police initiated the third interview. The district court found that although Dewey had initially told the police that she did not want to talk to anybody, she did not make an unequivocal or unambiguous request for an attorney at that time.

The Supreme Court concluded in *Connecticut v. Barrett* that even a limited invocation of the right to counsel does not prohibit all further interrogation.[9] In that case, after the police had provided Barrett with *Miranda* warnings, Barrett stated that he was willing to verbally discuss the incident but he would not "put anything in writing" without his attorney present.[10] The Court held that the fact that the police "took the opportunity provided by Barrett to obtain an oral confession is quite consistent with the Fifth Amendment. *Miranda* gives the [suspect] a right to choose between speech and silence, and Barrett chose to speak."[11]

Here, Dewey made no request whatsoever for an "attorney." In comparison to Barrett's statement, Dewey simply stated initially that she did not want to talk to anyone. The district court found that she made no affirmative, unequivocal, or unambiguous request for counsel, and that finding is supported by substantial evidence in the record. Therefore, we reject Dewey's argument that her statements during the second interview should have been suppressed because she had previously invoked her right to counsel.

*Right to remain silent*

■■

Dewey also argues that her statements were obtained in violation of her right to remain silent, which she invoked during the first interview. We disagree.

■■

The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."[12] Thus, once a suspect

---

[7] *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991).

[8] *Davis*, 512 U.S. at 461.

[9] 479 U.S. 523, 527-30 (1987).

[10] *Id.* at 526.

[11] *Id.* at 529.

[12] U.S. Const. amend. V.

shows that she intends to exercise her Fifth Amendment privilege by expressing her right to remain silent, any statement taken after that point cannot be used against the suspect, unless she freely and voluntarily waives that right.[13]

A suspect's statements during a custodial interrogation are not admissible unless *Miranda*'s procedural requirements have been followed.[14] In particular, the subject of a custodial interrogation must be advised of the right to remain silent, the right to consult with and have an attorney present during any interrogation, and police must inform the suspect that any statements made during the interrogation can be used as evidence against her.[15] Whether the police may reopen questioning after a suspect invokes her *Miranda* protections depends upon the particular rights that the suspect asserts.[16] For example, if a suspect requests counsel following *Miranda* warnings, all questioning must cease and the police may not question the suspect again without an attorney present unless the suspect herself initiates further communication or conversation.[17] If on the other hand the suspect only asserts her right to remain silent, then the police may subsequently initiate a new round of interrogation, provided that they " 'scrupulously honored' " the suspect's initial exercise of her " 'right to cut off questioning' " and again fully advise the suspect of her *Miranda* rights before resuming any further questioning.[18] In this case, the State does not dispute that Dewey invoked her right to remain silent in the first interview but argues that the police "scrupulously honored" the invocation and thereafter properly reinitiated questioning. We agree.

In *Michigan v. Mosley*, the Court, using a "totality of circumstances" analysis, focused on four facts in assessing whether the police "scrupulously honored" an invocation of the right to remain

---

[13]*Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

[14]*Id.* at 444.

[15]*Id.* at 473-74.

[16]*See Arizona v. Roberson*, 486 U.S. 675, 685 (1988) (acknowledging different consequences depending on whether suspect invokes right to counsel or right to remain silent); *Michigan v. Mosley*, 423 U.S. 96, 101 n.7, 104 n.10 (1975) (indicating that *Miranda* drew a distinction between invocation of right to counsel and invocation of right to remain silent); *United States v. Hsu*, 852 F.2d 407, 411 n.3 (9th Cir. 1988) (discussing the "silence/counsel dichotomy").

[17]*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) ("'[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'"); *see also Harte v. State*, 116 Nev. 1054, 1065, 13 P.3d 420, 427-28 (2000).

[18]*Mosley*, 423 U.S. at 103-06 (quoting *Miranda*, 384 U.S. at 474, 479).

silent. First, the police immediately ceased questioning once Mosley asked to end the interview. Second, the police resumed questioning only after the passage of a "significant period of time"—in that case, two hours. Third, the police administered new *Miranda* warnings before the second interview. Fourth, the police focused on a different crime in the second interview.[19] Based on these facts, the Court determined that the police "scrupulously honored" Mosley's right to remain silent and that Mosley's statements were not the result of police compulsion.[20]

In *United States v. Hsu*, the Ninth Circuit Court of Appeals established that neither the amount of elapsed time nor the identity of subject matter of the interview are of primary importance.[21] Rather, the court focused on the validity of a subsequent waiver and whether a fresh set of warnings were given.[22] We now adopt the Ninth Circuit's approach in *Hsu* and view the *Mosley* factors not as inflexible constraints but instead as relevant factors to be considered in determining if the police "scrupulously honored" the defendant's right to remain silent.[23] An incomplete showing on one of the *Mosley* factors would not necessarily require a conclusion that a suspect's right to remain silent was violated.

In this case, once Dewey invoked her right to remain silent in the first interview, the detective ended the interview. The police waited two hours before they initiated the next interview. The fact that the second interview concerned the same crime is not of great significance under these facts, since Dewey was provided with a fresh set of *Miranda* warnings at the beginning of the second interview.[24] Thereafter, Dewey read and signed a waiver form, and the police repeatedly reminded her of her right to stop the interview at any time. Looking at all the relevant circumstances, the immediate cessation of questioning upon Dewey's initial invocation of the right to remain silent, the two-hour time lapse between the interviews, and the careful and repeated *Miranda* warnings, we conclude that the police "scrupulously honored" Dewey's right to remain silent.

*Dewey's statements were voluntary*

Dewey also argues that her statements during the second interview were involuntary. We disagree.

---

[19]*Id.* at 105-06.

[20]*Id.* at 105.

[21]852 F.2d 407, 410 (9th Cir. 1988).

[22]*Id.*

[23]*Id.*

[24]*Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir. 1987).

In order to satisfy due process requirements, a confession must be "made freely and voluntarily, without compulsion or inducement."[25] When a defendant waives *Miranda* rights and makes a statement, the State bears the burden of proving voluntariness, based on the totality of the circumstances, by a preponderance of the evidence.[26] This is so even if there was ample evidence aside from the confession to support the conviction.[27]

A voluntary confession must be the product of a "rational intellect and a free will."[28] "[A] confession is involuntary if it was coerced by physical intimidation or psychological pressure."[29] This court has established certain criteria that must be considered when determining whether a statement has been voluntarily made: " '[t]he youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.' "[30] The suspect's prior experience with law enforcement may also be a relevant consideration for the district court.[31] Together, these factors help to assess whether the defendant's will was overborne at the time he or she confessed.[32]

The circumstances here demonstrate that Dewey's statements were voluntary. She was over thirty years old, a high school graduate with some college education. She home-schooled her children. She had been advised of her constitutional rights before each police interview and twice availed herself of her right to remain silent by refusing to speak to police. She had been in jail for only a couple of hours when the second interview began.

Dewey's conduct during her first interview evinces a clear understanding of how to end an interview. During the third interview, Dewey also demonstrated that she understood her right to seek the assistance of counsel. The evidence suggests that Dewey had a basic understanding of law enforcement and was given more than ample opportunity to clarify her understanding of her *Miranda*

---

[25]*Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987).

[26]*Quiriconi v. State*, 96 Nev. 766, 772, 616 P.2d 1111, 1114 (1980).

[27]*Blackburn v. Alabama*, 361 U.S. 199, 206 (1960).

[28]*Id.* at 208.

[29]*Brust v. State*, 108 Nev. 872, 874, 839 P.2d 1300, 1301 (1992).

[30]*Alward v. State*, 112 Nev. 141, 155, 912 P.2d 243, 252 (1996) (quoting *Passama*, 103 Nev. at 214, 735 P.2d at 323).

[31]*Rosky v. State*, 121 Nev. 184, 194, 111 P.3d 690, 696 (2005) (citing *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)).

[32]*Elvik v. State*, 114 Nev. 883, 892, 965 P.2d 281, 287 (1998).

rights. Each time, she acknowledged her understanding and signed a waiver of rights form.

In light of Dewey's education, her demonstrated ability to invoke her Fifth Amendment right to remain silent, and multiple reminders by the police of her absolute right to end the interview, we conclude that her confession was voluntary and the district court did not err in admitting the confession into evidence.

## CONCLUSION

We conclude that Dewey did not clearly and unequivocally invoke her right to counsel under *Miranda* when she initially indicated that she did not want to speak to anyone. We further conclude that although Dewey initially invoked her Fifth Amendment right to remain silent, the police "scrupulously honored" her right to remain silent and thereafter properly reinitiated questioning. Finally, we conclude that Dewey freely and voluntarily waived her *Miranda* rights before voluntarily making the inculpatory statements at issue, and the district court committed no error in admitting those statements into evidence at trial. Accordingly, we affirm the judgment of conviction.