An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID DANIEL MARQUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64201

**FILED**

DEC 3 0 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S.Young
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of sexual assault of a minor under 14 and five counts of lewdness with a child under 14. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Approximately five years after the abusive acts occurred, the victim, C.H., reported that her step-father, appellant David Marquez, repeatedly sexually abused her when she and her mother lived with him and his family from 2000 to 2005. On appeal, Marquez argues that the district court (1) erred when it denied his motion to suppress his statements to the police, (2) violated his right to due process when it failed to review the video of his police interrogation, (3) erred when it instructed the jury, and (4) abused its discretion when it denied his motion for an independent psychological examination of C.H.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-40076

*Admissibility of statements to police*

Marquez filed a motion to suppress his statements to police, which the district court denied following a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964).[1]

Marquez asserts that his will was overcome when he confessed to the police because the detective did not allow him to leave when he wished and the detective's tactics to secure his statement were psychologically coercive. The State argues that an analysis of the factors delineated in *Passama v. State*, 103 Nev. 212, 214, 735 P.3d 321, 323 (1987), demonstrates that Marquez's admissions were voluntary.

*Waiver of Miranda rights*

Whether a defendant knowingly and intelligently waived his or her *Miranda* rights "is a question of fact, which is reviewed for clear error. However, the question of whether a waiver is voluntary is a mixed question of fact and law that is properly reviewed de novo." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006).

---

[1]Although the district court erred by failing to make factual findings, *see Rosky v. State*, 121 Nev. 184, 191, 111 P.3d 690, 695 (2005) (stating that "trial courts *must* exercise their responsibility to make factual findings when ruling on motions to suppress" in order for this court to properly review a lower court's decision on appeal) (emphasis added) (internal citations and quotations omitted), this court has previously held that such an error does not warrant reversal. *Id.* at 194, 11 P.3d at 697. Here, we had the opportunity to review the video of the interrogation, and thus, had a factual record sufficient to engage in appellate review. Nevertheless, we take this opportunity to admonish the district court to make the requisite findings for review when deciding a suppression motion.

For a defendant's *Miranda* waiver to be effective, the waiver must be "voluntary, knowing, and intelligent." *Id.* For the statement to be admissible at trial, the State must show that the defendant waived his or her rights by a preponderance of the evidence. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). The State must also establish that law enforcement informed the defendant of his or her *Miranda* rights, the defendant understood the warnings, and the defendant then provided admissions without coercion. *Id.* at 384-85. But if law enforcement "threatened, tricked, or cajoled" the defendant into a waiver, it is not voluntary. *Miranda*, 384 U.S. at 476.

Here, the detective advised Marquez of his rights prior to asking him any questions from which the detective could have elicited an incriminating statement. Moreover, the detective asked Marquez if he understood the *Miranda* warnings and Marquez responded that he did. Marquez never said that he no longer wished to speak to the detective or that he wished to have an attorney. Instead, Marquez told the detective that he thought they should continue speaking at another time.

We conclude that Marquez waived his *Miranda* rights. Although his waiver was not express, Marquez continued to speak with the detective after the detective provided the *Miranda* warnings and asked Marquez if he understood the warnings. Therefore, this court can infer a waiver based on Marquez's conduct. *See Mendoza*, 122 Nev. at 276, 130 P.3d at 182.

Additionally, we conclude that Marquez did not invoke his *Miranda* rights when he suggested that he and the detective continue the interview at another time because Marquez did not unambiguously and unequivocally assert his right to remain silent or to have an attorney. *See*

*Dewey v. State*, 123 Nev. 483, 488, 169 P.3d 1149, 1152 (2007) (quoting *Davis v. United States*, 512 U.S. 452, 461-62 (1994) (holding that police are not required to stop questioning a suspect who has waived his or her *Miranda* rights unless the suspect subsequently proffers "an 'unambiguous and unequivocal'" invocation of the right to remain silent or the right to an attorney).

*Voluntariness*

"[V]oluntariness determinations present mixed questions of law and fact subject to this court's de novo review." *Rosky v. State*, 121 Nev. at 190, 111 P.3d at 694. This court will not impose its judgment in place of the district court's so long as the district court's ruling is based on substantial evidence. *Steese v. State*, 114 Nev. 479, 488, 960 P.2d 321, 327 (1998). "Substantial evidence is that which a reasonable mind might consider adequate to support a conclusion." *Id.*

The defendant's Fourteenth Amendment right to due process is violated "if his conviction is based, in whole or in part, upon an involuntary confession, . . . even if there is ample evidence aside from the confession to support the conviction." *Passama v. State*, 103 Nev. at 213, 735 P.2d at 322. Voluntariness is determined by "'the totality of the circumstances.'" *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) (quoting *Fikes v. Alabama*, 352 U.S. 191, 197 (1957)). Specifically, we will look to the *Passama* factors, *see Passama*, 103 Nev. at 213, 735 P.2d at 322, and whether the police used intrinsic or extrinsic falsehoods to secure the confession, *see Sheriff, Washoe Cty. v. Bessey*, 112 Nev. 322, 325, 914 P.2d 618, 619 (1996). We address each in turn.

*Passama factors*

We have held that "[t]he question [of voluntariness] in each case is whether the defendant's will was overborne when he confessed." *Passama*, 103 Nev. at 214, 735 P.2d at 323. The trial court must consider factors such as "the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.*

The totality of the circumstances shows that the police did not coerce Marquez during the interrogation. First, the record shows that Marquez was 46 years old at the time of the interrogation, so the police did not take advantage of his youth. Second, nothing in the record reflects that Marquez's education or intellect is below normal, so the police did not take advantage of his lack of education or intelligence. Third, Marquez received *Miranda* warnings, he indicated that he understood the warnings, he did not invoke his right to remain silent or request an attorney, and he spoke to the detective. Thus, the police did not overbear Marquez by failing to advise him of his rights. Fourth, Marquez was not detained prior to the interrogation. Therefore, the police did not overcome Marquez's will through a lengthy detention. Fifth, the interrogation lasted only about an hour before Marquez confessed, so this was not a prolonged interrogation. Also, the detective only questioned Marquez on one occasion, so the questioning was not repeated. Lastly, the record does not indicate, and Marquez does not argue, that police mistreated him. Therefore, the police did not use physical coercion to overcome Marquez's will and secure a confession.

Accordingly, our analysis shows that Marquez made his statement voluntarily, knowingly, and intelligently.

*Coercion through police deception*

This court has held that trial courts should also consider police deception in evaluating the voluntariness of a confession. *Bessey*, 112 Nev. at 325, 914 P.2d at 619. Police deception does not automatically render a confession involuntary. *Id.* Police subterfuge is permissible if "the methods used are not of a type reasonably likely to procure an untrue statement." *Id.* at 325, 914 P.2d at 620. This court has distinguished between intrinsic falsehoods and extrinsic falsehoods. *Id.* at 325-26, 914 P.2d at 620. Intrinsic falsehoods imply the existence of implicating evidence and are more likely to secure a truthful confession from a defendant. *Id.* at 326, 914 P.2d at 620. Extrinsic falsehoods involve issues that are collateral to the crime and are more likely to overbear a defendant's will and secure a false confession or "a confession regardless of guilt." *Id.*; *see also Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (concluding that a confession was coerced when police threated a defendant that "state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate'"). Deceptions that are likely to produce a false confession are not permissible and render a confession involuntary. *Bessey*, 112 Nev. at 326, 914 P.3d at 620.

Marquez alleges that the detective impermissibly deceived him in order to secure a confession when the detective said that their conversation was confidential.[2] *If* the detective had promised Marquez

_____

[2]We conclude that the other techniques the detective used to secure Marquez's confession of which he complains constituted manipulation, not deception.

that their conversation would remain confidential, such deception *would* constitute an external falsehood and require suppression of his statement. *Id.* at 326, 914 P.2d at 620-21. The deception would be an external falsehood because such a promise is collateral to the crime and could motivate a suspect to confess regardless of guilt. *Id.* Here, the detective said that he was not telling everyone about the sexual assault allegations. His statement is ambiguous and we cannot conclude that it rises to a guarantee of confidentiality. Moreover, the detective provided *Miranda* warnings at the beginning of the interview and the detective also informed Marquez that anything he said could be used against him in a court of law. As such, Marquez could not expect immunity or confidentiality after confessing. Therefore, the police did not use an external falsehood to coerce Marquez's confession and the trial court did not err when it denied Marquez's motion to suppress his statements to police.

*Failing to review the interrogation video*

At the *Jackson v. Denno,* 378 U.S. 368 (1964), hearing on Marquez's suppression motion, defense counsel asked the judge if she reviewed the video of the police interrogation. The judge responded that she did not watch the video but reviewed the transcript instead. Defense counsel did not object when the court denied the motion without reviewing the video.

Marquez contends that the court violated his due process rights by failing to review the interrogation video. The State maintains that Marquez fails to demonstrate that the district court erred by not reviewing the video.

Nevada does not have a specific statute or court rule dictating the materials that a trial court judge must review prior to ruling on a motion in a criminal case. However, the Nevada Code of Judicial Conduct requires that judges "perform judicial . . . duties competently and diligently." Canon 2, Rule 2.5(A). "Competence . . . requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office." *Id.* at comment 1. This rule implies that a judge is required to review evidence submitted in conjunction with a motion prior to ruling on that motion.

Although this court's review is generally precluded when a party fails to object at trial, this court may nonetheless review for plain error. "'Under th[is] standard, an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing actual prejudice or a miscarriage of justice.'" *Ramirez v. State*, 126 Nev. 203, 208, 238 P.3d 619, 623 (2010) (alteration in original) (quoting *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).

Marquez asserts that he was prejudiced because the district court failed to fully ascertain the dynamics of the interrogation when it neglected to review the interrogation video. Interestingly, he does not argue what additional insight the district court would have gleaned from watching the video. Marquez does not allege any acts by the detective (such as the detective's tone, volume, or rate of speech; a threatening stance; inappropriate hand gestures; etc.) that were not reflected in the transcript and that could impact a voluntariness determination. The video reflects that the detective spoke to Marquez respectfully throughout the interview. The detective used an appropriate volume and a

professional, respectful tone. The detective also remained seated throughout the interview (except when he momentarily left the room) and never made any attempt to intimidate Marquez. Therefore, we conclude that even if the district court erred when it failed to review the interrogation video, the error was harmless. *See* NRS 178.598 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

*Jury instructions*

At trial, Marquez objected to the jury instruction number 19 regarding the voluntariness of his statement to police. Marquez sought an instruction based on *State v. Foquette*, 67 Nev. 505, 533, 221 P.2d 404, 419 (1950). The court overruled Marquez's objection, stating that its standard instruction sufficiently instructed the jury. Marquez did not object to jury instruction number 20.

On appeal, Marquez argues that he was entitled to a *Foquette* instruction because instructions 19 and 20, when read together, required the jury to find that his statement to police was voluntary solely because he received *Miranda* warnings.[3] The State argues that Marquez's unsupported statements that the instructions misled the jury do not demonstrate that he was entitled to a *Foquette* instruction.

---

[3]Marquez requested that instruction number 19, which required the jury exclude his confession unless it determined that he voluntarily confessed, include factors for the jurors to weigh when they considered whether his confession was voluntary. Instruction number 20, which Marquez did not oppose either separately or in conjunction with instruction number 19, informed the jury that *Miranda* warnings advise a suspect of his or her right against self-incrimination.

Because Marquez did not object at trial to the court presenting instructions 19 and 20 in concert, this court will not reverse his convictions unless it determines the district court committed plain error. *Ramirez*, 126 Nev. at 208, 235 P.3d at 623; *see also* NRS 178.602; NRS 177.255. "The threshold question is whether the instruction is a correct statement of the law." *Watson v. State*, 130 Nev., Adv. Op. 76, 335 P.3d 157, 171 (2014).

Marquez concedes that the jury instructions were correct statements of the law, so he cannot surmount the primary requirement for reversal: that the instructions incorrectly stated the law. *See id.* He does not explain how two correct legal statements, simply because they were read back-to-back, misled the jury. The court sufficiently instructed the jury on the defense theory of the case—that Marquez gave a false confession to police due to the coercive nature of the interrogation—when the court instructed the jury that it must determine for itself whether the confession was voluntary and that it must disregard the confession if it determines that it was not.

Although the *Foquette* instruction was more thorough, the court's failure to give the more thorough of two correct instructions does not constitute plain error. Thus, the district court did not err in instructing the jury.

*Necessity of a psychological exam of the victim*

Marquez filed a motion for an independent psychological examination of the complaining witness, which the district court denied. The court did not make any findings of fact either in open court or in its subsequently filed order.

Marquez alleges that the district court erred when it denied his motion for an independent psychological examination of C.H. because (1) her delayed disclosure is suspicious, especially because Marquez and C.H. had not lived in the same household for approximately five years when C.H. made allegations against him and (2) her mother did not file for divorce after learning of the allegations. The State contends that an application of the *Koerschner* factors, *see Koerschner v. State*, 116 Nev. 1111, 1116-17, 13 P.3d 451, 455 (2000), proves that a psychological examination of C.H. is not warranted.

In *Koerschner*, this court held that "'[t]he trial judge should order an examination if the defendant presents a compelling reason for such an examination.'" *Id.* at 1116, 13 P.3d at 454 (quoting *Washington v. State*, 96 Nev. 305, 307, 608 P.2d 1101, 1102 (1980). To determine if such a need exists, trial courts must examine three factors:

> [first,] whether the State actually calls or obtains some benefit from an expert in psychology or psychiatry, [second,] whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and [third,] whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.

*Id.* at 1117, 13 P.3d at 455.

On appeal, this court reviews for an abuse of discretion. *Abbott v. State*, 122 Nev. 715, 723, 138 P.3d 462, 467 (2006). "In exercising its discretion, the district court should base its decision on the facts and circumstances of each case." *Id.* (internal citations, modifications, and quotations omitted).

In the instant case, an analysis of the *Koerschner* factors reveals that Marquez did not prove a compelling need for C.H. to be examined. *See Koerschner*, 118 Nev. at 1116-17, 13 P.3d at 455. First, the State did not call an expert in psychology or psychiatry to testify, nor did the State obtain any benefit from such an expert. *See id.* at 1117, 13 P.3d at 455. Second, the allegations of the offense were substantiated by significant evidence besides the victim's testimony. *See id.* at 1117, 13 P.3d at 455. Here, the State introduced the video recording of Marquez's voluntary statement to police, in which he corroborated many of C.H.'s allegations.

Lastly, Marquez failed to present any evidence that C.H.'s mental or emotional state impacted her reliability. *See Koerschner*, 116 Nev. at 1117, 13 P.3d at 455. Marquez improperly focuses on C.H.'s delayed disclosure of the abuse and her mother's failure to file for divorce after C.H.'s disclosures as evidence that C.H.'s mental or emotional state impacts her reliability. Marquez's argument that the victim's delay in reporting the abuse affects her veracity is unsound, because "delayed reporting of CSA [child sexual abuse] is the norm rather than the exception." Deborah A. Connolly and J. Don Read, *Remembering Historical Child Sexual Abuse*, 47 Criminal Law Quarterly 438, 440 (2003).

Marquez also argues that C.H.'s allegations are not credible because C.H.'s mother failed to divorce Marquez. However, the mother's failure to pursue divorce proceedings is immaterial to C.H.'s emotional state and her corresponding ability to testify truthfully; such a failure to act could only impact the mother's emotional or mental state and the mother's veracity. C.H.'s reliability cannot be determined by her mother's

Supreme Court
OF
Nevada

(O) 1947A

12

acts or failures to act. Thus, the third factor likewise weighs in the State's favor.

We therefore conclude that the district court properly denied Marquez's motion because he did not demonstrate a compelling need for an independent examination of the victim.

Accordingly, we ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:     Hon. Michelle Leavitt, District Judge
        Anthony L. Abbatangelo
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk