133 Nev., Advance Opinion 20

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| TOMMY LAQUADE STEWART, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 70069 FILED MAY 04 2017 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit robbery, burglary, robbery, and first-degree kidnapping. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

*Affirmed.*

Marchese Law Offices, PC, and Jess R. Marchese, Las Vegas, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Jonathan VanBoskerck, Chief Deputy District Attorney, Clark County, for Respondent.

---

BEFORE DOUGLAS, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, GIBBONS, J.:

In this appeal, we are asked to analyze issues related to dual convictions for first-degree kidnapping and robbery, as well as the sufficiency of the warning given pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant Tommy Stewart, along with another unidentified

17-14812

man, demanded entry into victim Natasha Lumba's apartment at gunpoint, ordered Lumba to lie face down in her bedroom while being guarded, and stole electronics, cash, and other personal items from the apartment. After a three-day jury trial, Stewart was found guilty on all counts and given a sentence of life with the possibility of parole. On appeal, Stewart argues that (1) there was insufficient evidence to support a conviction of both robbery and kidnapping and (2) the *Miranda* warning given by police was legally insufficient.

We hold that (1) there was sufficient evidence to support Stewart's convictions for kidnapping and robbery and (2) the *Miranda* warning was legally sufficient. Accordingly, we affirm the district court's judgment of conviction.

### FACTS AND PROCEDURAL HISTORY

*The crime*

On January 20, 2015, Stewart and another unidentified man approached Lumba as she entered her apartment, held her at gunpoint, and told her to let them into the apartment. Once in the apartment, the men told Lumba to lie face down on the ground in the back bedroom. The men took turns guarding Lumba while ransacking her apartment and looking for things to steal. While Lumba was on the floor, one of the attackers put his hand under her bra and underwear to search for money or items she might have concealed.

After approximately 10 or 15 minutes, the two men finished their search of the apartment. Just before leaving, the two men told Lumba not to call the police or they would come back to kill her. The two men left Lumba's apartment, taking with them various electronics and cash. Lumba later called 911, and Las Vegas Metropolitan Police Department (LVMPD) personnel arrived on scene.

*The investigation*

During their investigation, LVMPD evidence technicians found Stewart's fingerprints on Lumba's jewelry box. Additionally, LVMPD detectives conducted a follow-up interview and photographic lineup, wherein Lumba identified two potential suspects, one of whom was Stewart. The LVMPD located Stewart and detained him for further questioning.

*The interrogation*

Prior to questioning, an LVMPD detective read Stewart the warning from the LVMPD *Miranda* card:

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to have the presence of an attorney during questioning. If you cannot afford an attorney one will be appointed before questioning. Do you understand these rights?

Stewart indicated that he understood his rights and agreed to talk with the detective. Stewart initially denied being at Lumba's apartment but later admitted to being there after being confronted with the fingerprint evidence. Stewart admitted to being in Lumba's apartment on the night in question with another man and admitted to stealing her personal effects, but Stewart stated that he had not entered the bedroom.

*The trial*

The State charged Stewart with conspiracy to commit robbery, burglary while in possession of a firearm, robbery with use of a deadly weapon, and first-degree kidnapping with use of a deadly weapon.

Stewart filed two pretrial motions to suppress his statement to LVMPD detectives, arguing that the LVMPD's *Miranda* warning was legally insufficient. The district court denied both motions.

After a three-day trial, the jury found Stewart guilty on all counts. Stewart was sentenced to life with the possibility of parole, and he then filed the instant appeal.

## ANALYSIS

*Sufficient evidence exists to support Stewart's dual convictions of first-degree kidnapping and robbery*

Stewart challenges the evidence underlying the first-degree kidnapping conviction, arguing his conviction for first-degree kidnapping is not supported by the evidence because the movement of Lumba was incidental to the robbery, it did not substantially increase the risk of harm to her, nor did it go beyond that contemplated for completion of the robbery. We disagree.

In order to determine "whether a verdict was based on sufficient evidence to meet due process requirements, this court will inquire whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (internal quotation marks omitted). "The jury's verdict will not be disturbed on appeal when there is substantial evidence supporting it." *Brass v. State*, 128 Nev. 748, 754, 291 P.3d 145, 150 (2012).

The crime of first-degree kidnapping is described in NRS 200.310(1), while the crime of robbery is defined in NRS 200.380. A conviction for first-degree kidnapping requires that a "person . . . willfully seizes, confines, . . . conceals, kidnaps or carries away a person by any means whatsoever . . . for the purpose of committing . . . robbery upon or from the person." NRS 200.310(1). A conviction for robbery requires "the unlawful taking of personal property from the person of

another . . . against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property." NRS 200.380. Dual convictions under both statutes are permitted based upon the same conduct. *Mendoza v. State*, 122 Nev. 267, 274-75, 130 P.3d 176, 180 (2006). However, in such cases:

> [T]o sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion.

*Id.* at 275, 130 P.3d at 181. In general, "[w]hether the movement of the victim is incidental to the associated offense and whether the risk of harm is substantially increased thereby are questions of fact to be determined by the trier of fact in all but the clearest cases." *Curtis D. v. State*, 98 Nev. 272, 274, 646 P.2d 547, 548 (1982); *see also Gonzales v. State*, 131 Nev., Adv. Op. 49, 354 P.3d 654, 666 (Ct. App. 2015).

Here, we conclude that there is sufficient evidence to support Stewart's dual convictions for robbery and first-degree kidnapping. The jury heard evidence that Stewart took Lumba's personal property against her will by means of force, violence, or fear of injury. Further, the jury heard evidence that Lumba's movement substantially exceeded the movement necessary to complete the robbery and/or substantially increased the harm to her. Indeed, Lumba was accosted as she entered her residence, taken to the back bedroom, guarded at gunpoint, face down, while Stewart and the other suspect rummaged through her house and stole her belongings. Whether Lumba's movement was incidental to the

robbery, and whether the risk of harm to her was substantially increased, are questions of fact to be determined by the jury in "all but the clearest of cases." *Curtis D.*, 98 Nev. at 274, 646 P.2d at 548. This is not one of the "clearest of cases" in which the jury's verdict must be deemed unreasonable; indeed, a reasonable jury could conclude that Stewart forcing Lumba from her front door into her back bedroom substantially exceeded the movement necessary to complete the robbery and that guarding Lumba at gunpoint substantially increased the harm to her. We conclude that the evidence presented to the jury was sufficient to convict Stewart of both robbery and first-degree kidnapping.

*The district court did not err in denying Stewart's motion to suppress statements made to police because the Miranda warning given to Stewart was sufficient*

Stewart argues the *Miranda* warnings given to him failed to advise him that he could consult with an attorney before and during interrogation. Stewart contends the warnings simply indicated that he had the right to an attorney, while failing to convey directly or indirectly, that he could actively consult with that attorney throughout the questioning. We disagree.

*Miranda* establishes procedural safeguards "to secure and protect the Fifth Amendment privilege against compulsory self-incrimination during the inherently coercive atmosphere of an in-custody interrogation." *Dewey v. State*, 123 Nev. 483, 488, 169 P.3d 1149, 1152 (2007). *Miranda* prescribed the four now-familiar warnings:

> [A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if

SUPREME COURT OF NEVADA

(O) 1947A

he cannot afford an attorney one will be appointed
for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 59-60 (2010) (alterations in original) (quoting *Miranda*, 384 U.S. at 479). To be constitutionally adequate, *Miranda* warnings must be "sufficiently comprehensive and comprehensible when given a commonsense reading." *Powell*, 559 U.S. at 63.

Stewart first argues the *Miranda* warning given in this case did not inform him that he could consult an attorney before and during questioning. This argument is not supported by the record. The *Miranda* warning given to Stewart stated, in part, "You have the right to have the presence of an attorney during questioning. If you cannot afford an attorney one will be appointed before questioning." Given a commonsense reading, these two clauses provide a constitutionally adequate warning— the warning informed Stewart he had the right to counsel before and during questioning, as specifically required by *Miranda*. *See Powell*, 559 U.S. at 63. Although the warnings were perhaps not the clearest possible formulation of *Miranda*'s right-to-counsel advisement, they were constitutionally sufficient. *Id.* Thus, we conclude Stewart's first *Miranda* argument fails.

Additionally, Stewart argues that the warning only advised him that he had the right to an attorney but not that he could actively consult with that attorney throughout the questioning. We conclude this argument is without merit. Indeed, the right to an attorney *is* the right to consult with that attorney, and the argument to the contrary relies on an absurd interpretation of the *Miranda* warning. *See Powell*, 559 U.S. at 62-63. Thus, we conclude Stewart's second *Miranda* argument fails.

Therefore, we hold that the district court did not err in determining Stewart received an adequate *Miranda* warning prior to making statements to police and, thus, did not err in denying Stewart's motions to suppress those statements.

## CONCLUSION

We conclude that there was sufficient evidence to support Stewart's convictions for kidnapping and robbery and that the *Miranda* warning was legally sufficient. Accordingly, we affirm the district court's judgment of conviction.

_____, J.
Gibbons

We concur:

_____, J.
Douglas

_____, J.
Pickering