# IN THE SUPREME COURT OF THE STATE OF NEVADA

ELITA MALDONADO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68034

FILED

FEB 2 8 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon and robbery. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

On appeal, Elita Maldonado argues that (1) the State did not present sufficient evidence to convict her of first-degree murder with the use of a deadly weapon beyond a reasonable doubt; (2) the district court abused its discretion in denying her motion to suppress a recorded statement given to detectives; (3) the district court abused its discretion in denying her motion in limine to suppress recorded phone calls she made to her sisters while in custody in Wyoming; and (4) the district court erred in denying her request to enter a plea of guilty but mentally ill after the jury returned its verdict.

We conclude that (1) there was sufficient evidence to convict Maldonado of first-degree murder with the use of a deadly weapon beyond a reasonable doubt; (2) the district court did not abuse its discretion in denying Maldonado's motions to suppress; and (3) the district court did not err in denying Maldonado's motion to change her plea to guilty but mentally ill after the jury rendered a verdict. Accordingly, we affirm Maldonado's judgment of conviction.

17-06800

## FACTS AND PROCEDURAL HISTORY

*The murder*

Maldonado, who had a history of drug use and mental health issues, was working as a prostitute in Las Vegas. William Sanford solicited Maldonado's services. Sanford took Maldonado to his apartment and the two had sex. Maldonado claimed the sex triggered auditory hallucinations and she heard her children speaking to her. Maldonado claimed these hallucinations led her to believe Sanford had some direct knowledge or control over her children, whom Sanford had never met. Upon hearing these voices, Maldonado exited the apartment, sat in the parking lot, and was seen by several witnesses praying and talking to herself.

Maldonado eventually reentered the apartment. Upon her reentry, she found Sanford sleeping. Maldonado asked Sanford to help her find her children. Sanford refused and went back to sleep. Maldonado then hit Sanford in the head with a 40-pound weight.

Maldonado began to exit the room after striking Sanford, and Sanford followed her. A struggle ensued, and Sanford eventually began choking Maldonado and threatening to kill her. The struggle moved to the kitchen, where Maldonado grabbed a knife and stabbed Sanford to death.[1] Maldonado then changed her clothes, grabbed Sanford's cell phone, credit cards, and car keys, and stole his car.

---

[1]A subsequent autopsy identified 38 stab wounds, including defensive and post-mortem wounds, to Sanford's head, arm, neck, chest, back, and abdomen areas. Additionally, the autopsy revealed a fractured skull, likely due to blunt force trauma.

 

*The Wyoming jail*

Maldonado abandoned Sanford's car and eventually ended up on a freight train that took her to Uinta County, Wyoming, where she was arrested for an unrelated crime. Las Vegas Metropolitan Police Department (LVMPD) detectives tracked Maldonado down to the Wyoming jail where she was taken into custody, and flew to Wyoming to question her regarding Sanford's murder.

*The police interview*

LVMPD detectives interviewed Maldonado regarding her involvement in Sanford's murder. The detectives recorded the interview without informing Maldonado. Prior to questioning, Maldonado orally waived her *Miranda* rights and the detectives had Maldonado sign a card acknowledging that she waived those rights.

During the interview, Maldonado admitted to killing Sanford and described her auditory hallucinations on the night of the murder. Additionally, Maldonado admitted to using crystal methamphetamine on the night of the murder and that her auditory hallucinations were often brought on by her crystal methamphetamine use.

*The jail calls*

After the interview with LVMPD detectives, Maldonado made calls to her two sisters from the Wyoming jail. Maldonado's account of the murder given to her sisters varied from the account she gave to detectives—notably, she told police the attack was triggered by her auditory hallucinations, but told her sisters that Sanford raped her. Maldonado also told her sisters she was high on crystal methamphetamine at the time of the murder, and that Sanford chose not to defend himself.

Maldonado made the calls from a grey phone inside the booking area, allegedly within earshot of a Wyoming corrections officer.

SUPREME COURT
OF
NEVADA

(O) 1947A

3

The booking area is always video recorded and is generally audio recorded. Above the grey phone hangs a sign that reads, "Local attorney calls are free and are not monitored or recorded."

*Pretrial motions*

The State charged Maldonado with murder with use of a deadly weapon and robbery. Maldonado pleaded not guilty by reason of insanity.

*Motion to suppress Maldonado's statements made to police*

Before trial, Maldonado filed a motion to suppress her statements to police, arguing her statements were not made knowingly, intelligently, and voluntarily because she "was mentally ill and suffering from active delusions during the interview." Following a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), the district court denied the motion to suppress, finding the statements were made knowingly, voluntarily, and intelligently, and that Maldonado did not exhibit signs of mental health issues during the interview.

*Motion in limine to suppress evidence of jail calls*

Maldonado filed a motion in limine to suppress evidence of the jail calls, arguing the calls had been illegally intercepted in contravention of Wyoming law. Maldonado further argued the calls were made with a reasonable expectation of privacy, and thus were obtained through an unlawful seizure. Following an evidentiary hearing, the district court denied the motion.

*Trial*

During Maldonado's jury trial, both the defense and the State presented expert witnesses to testify about Maldonado's mental state during the murder. The defense expert testified that Maldonado had a mental illness and was legally insane during the murder. The State

expert, noting the differences between Maldonado's statements regarding the crime given to detectives and her sisters, concluded that Maldonado was aware that she was stabbing a human being when the crime occurred and that Maldonado appreciated the wrongfulness of her conduct.

*Penalty phase*

After an eight-day trial, Maldonado was found guilty of first-degree murder with the use of a deadly weapon and robbery. Following the verdict, Maldonado filed a motion to change her plea to guilty but mentally ill, arguing NRS 174.035(1) allows such a change to be made after a jury's verdict if evidence of mental illness is adduced at trial. The district court denied the motion. Maldonado was sentenced to serve concurrent and consecutive prison terms totaling 28 years to life in the aggregate.

## ANALYSIS

*The State presented sufficient evidence to convict Maldonado of first-degree murder with the use of a deadly weapon beyond a reasonable doubt*

Maldonado contends there was not sufficient evidence to support a first-degree murder conviction because she (1) was legally insane when she struck Sanford with a weight, and (2) was acting in self-defense when she stabbed Sanford, resulting in his death. We disagree.

In order to determine "whether a verdict was based on sufficient evidence to meet due process requirements, this court will inquire whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (emphasis in original) (internal quotation marks omitted). "The jury's verdict will not be disturbed on

appeal when there is substantial evidence supporting it." *Brass v. State*, 128 Nev. 748, 754, 291 P.3d 145, 150 (2012).

We conclude there is sufficient evidence, when viewed in a light most favorable to the prosecution, from which a rational jury could reasonably infer that Maldonado unlawfully killed Sanford with malice aforethought and the killing was willful, deliberate, and premeditated, and that Maldonado used a deadly weapon in the commission of that crime, and therefore Maldonado was guilty of first-degree murder with use of a deadly weapon, NRS 200.010(1); NRS 200.030(1)(a), (b); NRS 193.165. We further conclude there was sufficient evidence from which that jury could have rejected Maldonado's claims of insanity and self-defense.

*Substantial evidence supports the jury's finding that the murder was not done while Maldonado was legally insane*

Maldonado argues that, because she was legally insane at the time she struck Sanford with a weight, there was not sufficient evidence to support the first-degree murder conviction. We disagree.

To prove a defendant is legally insane, the defense must show "that the defendant labors under such a mental defect that the defendant cannot understand the nature of his actions, or cannot tell the difference between right and wrong." *Miller v. State*, 112 Nev. 168, 172, 911 P.2d 1183, 1185 (1996). "Because a finding of criminal liability requires a conclusion that a defendant's culpable mental state existed contemporaneously with a culpable act, a successful insanity defense must show the elements of [legal insanity] existed *at the time of the act.*" *Id.* (emphasis in original). Evidence that a defendant was voluntarily intoxicated at time of killing does not preclude finding that killing was willful, deliberate, and premeditated. NRS 193.220.

We conclude there was substantial evidence for the jury to reject Maldonado's insanity theory. The jury heard evidence from two expert witnesses, one of whom concluded Maldonado understood the nature and wrongfulness of her actions. Additionally, Maldonado's insanity theory is premised on her mental state when she struck Sanford with a weight—however, Maldonado was not charged with striking Sanford with the weight, she was charged with stabbing him to death a short while after striking him with the weight. Maldonado makes no substantive argument regarding her mental state during the stabbing. Maldonado's purported insanity during the weight attack has no bearing on Maldonado's mental state during the stabbing and, thus, is irrelevant. *See Finger v. State*, 117 Nev. 548, 576, 27 P.3d 66, 85 (2001) ("If [the defendant's delusion] would not amount to a legal defense, then [s]he is not [legally] insane.") Finally, Maldonado admitted she voluntarily used crystal methamphetamine on the night of the murder and that her auditory hallucinations were often brought on by her crystal methamphetamine use.

Accordingly, we hold that, when viewing this evidence in a light most favorable to the prosecution, there is sufficient evidence for a rational trier of fact to reject Maldonado's insanity theory.

*Substantial evidence supports the jury's finding that the murder was not done in self-defense*

Maldonado claims the murder occurred while she was acting in self-defense. Maldonado argues that, though she hit Sanford with the weight initially, "the stabbing incident was not a continuation of the weight incident" and that Sanford was actually the initial aggressor for the stabbing. We disagree.

We have directed courts to provide jury instructions regarding self-defense that are tailored to the facts and circumstances of a case. *Runion v. State*, 116 Nev. 1041, 1051, 13 P.3d 52, 59 (2000). Here, the relevant jury instructions provided that

> self-defense is justified and not unlawful when the person who does the killing actually and reasonably believes:
>
> 1. That there is imminent danger that the assailant will either kill him or cause him great bodily injury; and
>
> 2. That it is absolutely necessary under the circumstances for him to use in self-defense force or means that might cause the death of the other person, for the purpose of avoiding death or great bodily injury to himself.

Additionally, the instructions provided "[t]he right of self-defense is generally not available to an original aggressor." We note the jury instructions here comport with the recommended jury instructions provided in *Runion*.

Here, the jury heard substantial evidence that Maldonado was the initial aggressor in the altercation because she attacked a then-sleeping Sanford with a 40-pound weight before stabbing him 38 times. Indeed, Maldonado admitted to detectives she hit Sanford with the weight, which fractured Sanford's skull, immediately before the subsequent struggle and stabbing. Additionally, Maldonado's statement on the jail call to her sister that Sanford chose not to defend himself belies her self-defense argument.

When viewing this evidence in a light most favorable to the prosecution, we conclude there is sufficient evidence for a rational trier of fact to reject Maldonado's self-defense theory and find each element of

first-degree murder with use of a deadly weapon beyond a reasonable doubt.

*The district court did not err in denying Maldonado's motion to suppress a recorded statement given to detectives*

Maldonado claims that her waiver of *Miranda* rights was not voluntary, knowing, or intelligent and her statements, including her confession, were not freely given due to her mental health issues. Accordingly, she claims the district court erred in denying her motion to suppress. The State argues that an analysis of the factors delineated in *Passama v. State*, 103 Nev. 212, 214, 735 P.2d 321, 323 (1987), demonstrates that Maldonado's admissions were voluntary.

"[F]indings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence." *State v. Miller*, 110 Nev. 690, 694, 877 P.2d 1044, 1047 (1994). "Therefore, the district court's findings will be upheld unless this court is left with the definite and firm conviction that a mistake has been committed." *State v. Harnisch*, 113 Nev. 214, 219, 931 P.2d 1359, 1363 (1997) (internal quotation marks omitted), *clarified on denial of reh'g*, 114 Nev. 225, 954 P.2d 1180 (1998), *disapproved of on other grounds by State v. Lloyd*, 129 Nev. 739, 312 P.3d 467 (2013).

We conclude there is substantial evidence supporting the district court's findings of fact denying Maldonado's motion to suppress. We conclude, as discussed at length in the district court's findings of fact, (1) there was scant evidence of Maldonado's mental illness present during the interview with detectives; (2) the detectives' warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), were proper; (3) Maldonado's waiver was knowing, intelligent, and voluntary; and (4) the district court

properly considered the totality of the circumstances surrounding the statement in denying Maldonado's motion to suppress.

*Maldonado's argument regarding mental incompetence during the interview with detectives is not supported by the record*

Maldonado's argument regarding the inadmissibility of her statements, including her confession, to detectives is premised on her purported mental illness during questioning. We conclude this argument is not supported by the record.

As the district court noted in its findings of fact, the detectives saw no signs of mental health issues during the interview and that Maldonado appeared "cordial, calm, and responsive to questions asked." We conclude Maldonado's ability to coherently answer the detectives' questions throughout the interview constitutes substantial evidence of her mental capacity during the conversation with detectives. Accordingly, we hold Maldonado's argument that her *Miranda* waiver was involuntary based on her mental state is not supported by the record.

*There is substantial evidence the detectives properly advised Maldonado of her Miranda rights*

*Miranda* establishes procedural safeguards "to secure and protect the Fifth Amendment privilege against compulsory self-incrimination during the inherently coercive atmosphere of an in-custody interrogation." *Dewey v. State*, 123 Nev. 483, 488, 169 P.3d 1149, 1152 (2007). Though "no talismanic incantation" is necessary to satisfy *Miranda*'s strictures, *California v. Prysock*, 453 U.S. 355, 359 (1981), *Miranda* requires that a "suspect be informed . . . that [s]he has the right to an attorney before and during questioning, and that an attorney would be appointed for [her] if [s]he could not afford one." *Duckworth v. Eagan*, 492 U.S. 195, 204 (1989). We conclude the warning given by the detectives

before questioning apprised Maldonado of her rights pursuant to *Miranda* and, thus, constitutes substantial evidence that the warning was proper. Accordingly, we hold there is substantial evidence of Maldonado receiving a proper *Miranda* warning prior to questioning.

*There is substantial evidence Maldonado knowingly, intelligently, and voluntarily waived her Miranda rights*

Waiver of *Miranda* rights "is a question of fact, which is reviewed for clear error. However, the question of whether a waiver is voluntary is a mixed question of fact and law that is properly reviewed de novo." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006) (footnote omitted).

For a defendant's *Miranda* waiver to be effective, the waiver "must be voluntary, knowing, and intelligent." *Id.* For the statement to be admissible at trial, the State must show that the defendant knowingly and intelligently waived her rights by a preponderance of the evidence. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). When determining the voluntariness of a defendant's confession, however, we apply a totality of the circumstances test to determine whether the defendant's will has been overborne at the time of the confession. *Passama*, 103 Nev. at 214, 735 P.2d at 323.

> Factors to be considered include: the youth of the accused; [her] lack of education or [her] low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.

*Id.*

We conclude the State established by a preponderance of the evidence that Maldonado's waiver was intelligent, knowing, and

voluntary. The district court applied the factors delineated in *Passama* in its findings of fact, and concluded that the waiver was made voluntarily. We conclude these factors, when considered in totality, constitute substantial evidence supporting the district court's findings of fact. Accordingly, we hold the district court did not err in denying Maldonado's motion to suppress.

*The district court did not abuse its discretion in denying Maldonado's motion in limine and admitting the jail calls*

Maldonado claims the district court erred in admitting the Wyoming jail calls she made to her sisters. Maldonado argues that, pursuant to Wyoming law, she had an expectation of privacy in the calls and the content of the conversations undermined her insanity defense. Additionally, Maldonado argues the sign above the grey phone she used, which indicates that local attorney calls are not recorded or monitored, gave her a reasonable expectation that the call would not be monitored.

The State argues Maldonado did not have a reasonable expectation of privacy when making a call in jail, within earshot of a corrections officer. Additionally, the State argues the grey phone sign clearly indicated that only local attorney calls would not be recorded, and Maldonado was not making a call to a local attorney, further demonstrating she did not have a reasonable expectation of privacy.

The decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. *Mclellan v. State,* 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). The jail calls originated in Wyoming and are thus governed by Wyoming law. *See* NRS 48.077 (stating that "the contents of any communication lawfully intercepted under the laws of . . . another jurisdiction . . . if the interception took place within that jurisdiction, and any evidence derived from such a communication, are admissible in

[Nevada]"); *see also Mclellan*, 124 Nev. at 267, 182 P.3d at 109 (allowing the admission of taped recordings from California because the recordings were lawfully recorded in California). Wyoming law provides that "no person shall intentionally . . . [i]ntercept, attempt to intercept, or procure any other person to intercept or attempt to intercept any wire, oral or electronic communication." Wyo. Stat. Ann. § 7-3-702(a)(i) (2015). However, "oral communication" is defined as "any oral communication uttered by a person who *reasonably expects and circumstances justify the expectation that the communication is not subject to interception.*" *Id.* at § 7-3-701(a)(xi) (emphasis added).

Applying Wyoming law, we conclude Maldonado had no reasonable expectation that her jail call was not subject to interception. Indeed, "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." *Lanza v. New York*, 370 U.S. 139, 143 (1962). The calls were initiated by a corrections officer who told both sisters the call was originating from a jail, and the entirety of both calls took place within earshot of the same officer. Additionally, we conclude the sign near the grey phone did not provide Maldonado any additional reason to expect privacy; the sign applies only to local attorney calls—Maldonado made neither call to an attorney and thus had no reasonable expectation the calls would not be monitored or recorded.

The district court considered all of these issues in denying Maldonado's motion in limine to suppress the jail calls. Accordingly, we hold the district court did not abuse its discretion in admitting the jail calls.

*The district court did not err in denying Maldonado's request to change her plea to guilty but mentally ill after the jury returned its guilty verdict*

Maldonado claims NRS 174.035(4) conflicts with NRS 175.533(1) and should be read together to allow a defendant found guilty to then change her plea to guilty but mentally ill in order to receive the proper medical and psychological treatment while incarcerated outside of the general prison population. We conclude these statutes do not conflict and, thus, Maldonado's argument fails.

This court reviews questions of statutory construction de novo. *Sharpe v. State*, 131 Nev., Adv. Op. 32, 350 P.3d 388, 389 (2015). When a statute is unambiguous, we will look first to the plain language of the statute. *Id.*

NRS 174.035(4) allows a defendant to plead guilty but mentally ill, but "[a] plea of guilty but mentally ill must be entered not less than 21 days before the date set for trial." NRS 175.533(1) provides that, "[d]uring a trial, upon a plea of not guilty by reason of insanity, the trier of fact may find the defendant guilty but mentally ill if" certain conditions are met.

In reviewing the plain language of these statutes, we conclude they do not conflict or allow Maldonado to change her plea to guilty but mentally ill after the jury's verdict. Here, Maldonado did not enter a plea of guilty but mentally ill less than 21 days before trial but instead moved to change her plea after the jury returned its verdict. We conclude this is impermissible. Additionally, Maldonado argues the district court had the authority to change the plea; however, here, the trier of fact was the jury, not the judge. There is no statutory authority for the court to adjudicate a defendant "guilty but mentally ill" absent a finding by the jury or a defendant's plea 21 days before trial. Thus, we hold Maldonado's claim

 

that the district court erred by denying her motion to change her plea after the jury returned its verdict fails.

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. Stefany Miley, District Judge
       Sandra L. Stewart
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

(O) 1947A